# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SANDY HACKETT, an individual, | Case No.: 2:09-cv-02075-RLH-LRL |
| Plaintiff, | **O R D E R** |
| vs. | (Motions to Dismiss–##21, 23) |
| RICHARD FEENEY, an individual; ARTHUR PETRIE, an individual, TRP ENTERTAINMENT, LLC, a Nevada limited-liability company, PLAYLV GAMING OPERATION, LLC d/b/a PLAZA HOTEL AND CASINO, a Nevada limited-liability corporation, BROADWAY BOOKING OFFICE NYC, LTD, a New York corporation, | |
| Defendants. | |

Before the Court is Defendant PlayLV Gaming Operation d/b/a Plaza Hotel and Casino's **Motion to Dismiss** (#21), filed December 15, 2009. The Court has also considered Plaintiff Sandy Hackett's Opposition (#25), filed January 4, 2010, and Defendant's Reply (#27), filed January 14, 2010.

/

/

1

Also before the Court is Defendant Broadway Booking Office's **Motion to Dismiss** (#23), filed December 21, 2009. The Court has also considered Plaintiff's Opposition (#26), filed January 7, 2010, and Defendant's Reply (#29), filed January 19, 2010.

## BACKGROUND

Plaintiff alleges the following facts in his Complaint. In 2001, Plaintiff wrote a manuscript for a play based on the personalities of Frank Sinatra, Dean Martin, Sammy Davis, Jr., and Joey Bishop, collectively referred to as "The Rat Pack." (Dkt. #1, Compl. ¶ 10.) The play was titled "The Tribute to Frank, Sammy, Joey and Dean," or alternatively "The Rat Pack is Back" (hereinafter "The Show"). (*Id.*) On February 15, 2002, Plaintiff and Defendants Feeney and Petrie entered into an Operating Agreement for the purpose of creating "The Rat Pack Entertainment, LLC" (hereinafter "TRP"). (*Id.* ¶ 12.) TRP's purpose was to produce and market theatrical shows, primarily a production of The Show. The Show is booked through Broadway Booking Office and has run at venues throughout the United States. Currently, The Show runs at the Plaza Hotel and Casino ("The Plaza") in Las Vegas, Nevada.

On June 7, 2005, Plaintiff applied for copyright registration for The Show's manuscript titled "THE TRIBUTE TO FRANK, SAMMY, JOEY and DEAN" with the United States Copyright Office. (*Id.* ¶ 11; Ex. A.) In the copyright application, Plaintiff listed himself as the sole author of the manuscript and provided August 31, 2001 as the manuscript's creation date. (*Id.* Ex. A.)

On September 5, 2006, Plaintiff and his wife filed for divorce, thereby triggering an optional buyout provision within the Operating Agreement. Acting under this provision in late October 2006, Plaintiff entered into a written agreement to transfer his membership interest in TRP to Feeney and Petrie. All three parties allegedly agreed the transfer "would be in name only," Plaintiff would continue to be treated as a member of TRP, and Plaintiff could formally repurchase his membership interest at any time. (*Id.* ¶ 16.) Plaintiff and his wife subsequently withdrew their divorce petition. As a result, Plaintiff, Feeney and Petrie allegedly agreed, orally, the transfer was

1  "of no force or effect," and thereafter Plaintiff allegedly regained his membership interest in TRP.
2  (*Id*. ¶ 18.)
3         In 2009, tensions arose between Plaintiff, Feeney, and Petrie.  Tensions apparently
4  came to a head on September 9, when Feeney and Petrie, believing Plaintiff's prior transfer to be
5  effective (despite their previous alleged oral representations) and believing Plaintiff to be an "at-
6  will" employee, purported to fire Plaintiff and likewise end his involvement in producing The
7  Show.  (*Id.* ¶¶ 18, 22.)  The next day, Plaintiff sent a letter to Feeney, Petrie, The Plaza, and
8  Broadway that stated Plaintiff thereby:
9       terminate[d] any license or consent he may have granted ... to utilize his
         copyrighted materials or other creative materials in connection with [The Show].
10       Any further performance of [The Show] will be considered a willful infringement
         of [Plaintiff's] registered copyright and other rights.
11
12 (*Id*. ¶ 21.)  Despite Plaintiff's warning regarding The Show's copyright, Feeney and Petrie have
13 continued to produce, The Plaza has continued to host, and Broadway has continued to advertise,
14 market and book The Show.
15        On October 28, 2009, Plaintiff sued Defendants Feeney, Petrie, TRP, The Plaza,
16 and Broadway alleging, *inter alia*, copyright infringement.  Plaintiff further seeks an accounting
17 and the imposition of a constructive trust on The Show's profits.  On December 15, The Plaza
18 filed a Motion to Dismiss.  On December 21, Broadway also filed a Motion to Dismiss.  For the
19 following reasons, the Court denies both Motions.
20 **I.     The Plaza and Broadway's Motions to Dismiss**
21     **A.     Legal Standard**
22        A court may dismiss a plaintiff's complaint for "failure to state a claim upon which
23 relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A properly pled complaint must provide "a short
24 and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.
25 8(a)(2).  While a pleading generally need not contain detailed allegations, it must allege sufficient
26 facts "to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

1  544, 555 (2007). A complaint does not allege sufficient facts to raise a right to relief above the
2  speculative level if it contains nothing more than "labels and conclusions" or a "formulaic
3  recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)
4  (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Instead, in order to survive a motion to
5  dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is
6  plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (internal citation omitted).
7          In *Ashcroft v. Iqbal*, the Supreme Court provided a two-step approach for district
8  courts to apply when considering motions to dismiss. First, the Court must accept as true all
9  factual allegations in the complaint. *Id.* at 1950. A court does not, however, assume the truth of
10 legal conclusions merely because the plaintiff casts them in the form of factual allegations. *Id.* at
11 1950; *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). Mere recitals
12 of the elements of a cause of action, supported only by conclusory statements, also do not suffice.
13 *Iqbal*, 129 S. Ct. at 1949. Second, the Court must consider whether the factual allegations in the
14 complaint allege a plausible claim for relief. *Id*. at 1950. "A claim has facial plausibility when the
15 plaintiff pleads factual content that allows the court to draw a reasonable inference that the
16 defendant is liable for the alleged misconduct." *Id.* at 1949. Thus, where the complaint does not
17 permit the court to infer more than the mere possibility of misconduct, the complaint has
18 "alleged—but not shown—that the pleader is entitled to relief." *Id*. (internal quotation marks
19 omitted). When the claims in a complaint have not crossed the line from conceivable to plausible,
20 plaintiff's complaint must be dismissed. *Twombly*, 550 U.S. at 570.
21     **B.   Copyright Infringement**
22         Under § 106 of the Copyright Act, a copyright owner has the exclusive rights of
23 reproduction, derivative works, distribution, and display of his work. 17 U.S.C. § 106 (2006).
24 Anyone who violates these exclusive rights is liable for copyright infringement. 17 U.S.C. §
25 501(a). Thus, to support a claim for copyright infringement, the plaintiff must allege: (1)
26 ownership of a valid copyright; and (2) that the defendant infringed on the plaintiff's exclusive

rights under the Copyright Act. *Ellison v. Robertson,* 357 F.3d 1072, 1076 (9th Cir. 2004); *see also* 17 U.S.C. § 501(a). The Ninth Circuit recognizes three possible doctrines of copyright liability: direct infringement, contributory infringement, and vicarious infringement. *Ellison,* 357 F.3d at 1076.

### C. The Plaza's Motion to Dismiss (#21)

As a preliminary matter, the Court does not need to address Plaintiff's requests for an accounting and the imposition of a constructive trust because they are remedies, not causes of action.

The Plaza alleges Plaintiff's copyright infringement claim fails as a matter of law. In order to state a claim for vicarious copyright infringement, the plaintiff must allege: (1) he owns a valid copyright; (2) the defendant enjoyed a direct financial benefit from another's infringing activity; and (3) the defendant had the right and ability to supervise the infringing activity. *Id.* A direct financial benefit exists where the infringing activity "acts as a draw for customers." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001). Additionally, a party has the right and ability to supervise infringing activity when it may exert control over the alleged infringer, such as the "ability to block infringers' access to a particular environment." *Id.*

Although the Court does not address direct or contributory copyright infringement, it finds Plaintiff has—at a minimum—stated a valid claim for vicarious copyright infringement against The Plaza. First, Plaintiff alleges he owns a valid copyright for the manuscript of The Show. Next, Plaintiff alleges that once he revoked license of his copyright, TRP's continued production of The Show infringed on his copyright. Plaintiff further alleges The Plaza received a direct financial benefit from TRP's infringing activity. Indeed, The Show may reasonably act as a draw for customers to The Plaza's various restaurants, bars, gaming operations, and hotel accommodations. Lastly, Plaintiff alleges The Plaza had the right and ability to supervise TRP's infringing activity by virtue of its host contract with TRP. Although The Plaza argues that under such contracts "the host venue is generally not responsible for anything other than providing the

AO 72
(Rev. 8/82)

state and space ... in which the show is performed," (Dkt. #21, Opp'n 4), the Ninth Circuit has held that a host venue does have the right to block infringing activities. *See Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1149 (9th Cir.1992) (indicating landlords and licensors who permit infringing activity on their premises may be liable for copyright infringement). Taking Plaintiff's allegations as true, the Court concludes Plaintiff has sufficiently pled a vicarious copyright infringement claim against The Plaza. As such, the Court denies The Plaza's Motion to Dismiss.

### D.  Broadway's Motion to Dismiss (#23)

Similarly, Broadway asks the Court to dismiss Plaintiff's copyright infringement claim because the claim fails as a matter of law. To state a claim for contributory copyright infringement, the plaintiff must allege: (1) he owns a valid copyright; (2) the defendant had knowledge of infringing activity; and (3) the defendant either induced, caused, or materially contributed to the infringing conduct of another. *Ellison,* 357 F.3d at 1076. A party has materially contributed to the infringing conduct of another when it has a "direct connection to that infringement." *Perfect 10, Inc. v. Visa Intern. Serv. Ass'n*, 494 F.3d 788, 796 (9th Cir. 2007). Stated differently, a party has materially contributed to the infringing activity if the activity would not have continued but for the party's support services. *See Napster,* 239 F.3d at 1022; *see also Fonovisa, Inc. v. Cherry Auction, Inc*., 76 F.3d 259, 264 (9th Cir. 1996) (finding the defendant had materially contributed to the infringing activity because "it would [have been] difficult for the infringing activity to take place in the massive quantities alleged without the support services provided by the [defendant]".).

Plaintiff has successfully pled a claim for contributory copyright infringement against Broadway. First, Plaintiff alleges he owns a valid copyright for the manuscript of The Show. Next, Plaintiff alleges that once he revoked license of his copyright, TRP's continued production of The Show infringed on his copyright. Plaintiff further alleges he notified Broadway of TRP's infringing activity and thus Broadway had knowledge of TRP's infringing activity.

AO 72
(Rev. 8/82)

Finally, Plaintiff alleges Broadway's continued advertising, marketing, and booking of The Show materially contributed to TRP's infringing activity.  Based on Plaintiff's allegations, TRP's allegedly infringing activity would not have continued but for Broadway's advertising, marketing and booking support.  Accordingly, the Court concludes Plaintiff has sufficiently pled a contributory copyright infringement claim against Broadway.  For this reason, the Court denies Broadway's Motion.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendant The Plaza's Motion to Dismiss (#21) is DENIED.

IT IS FURTHER ORDERED that Defendant Broadway's Motion to Dismiss (#23) is DENIED.

Dated: April 1, 2010.

_____
ROGER L. HUNT
**Chief United States District Judge**

7

AO 72
(Rev. 8/82)