1  Mark G. Tratos (Nevada Bar No. 1086)
   F. Christopher Austin (Nevada Bar No. 6559)
2  Peter H. Ajemian (Nevada Bar No. 9491)
   GREENBERG TRAURIG, LLP
3  3773 Howard Hughes Parkway
   Suite 400 North
4  Las Vegas, Nevada 89169
   Telephone: (702) 792-3773
5  Facsimile: (702) 792-9002

6  Counsel for Defendants

7

                    **UNITED STATES DISTRICT COURT**
8
                          **DISTRICT OF NEVADA**
9

10 | SANDY HACKETT, an individual          Case No. 2:09-cv-02075-RLH-LRL

                Plaintiff,
11                                         **DEFENDANTS/COUNTERCLAIMANTS'**
   vs.                                     **MOTION TO COMPEL THE**
12                                         **DEPOSITION OF PLAINTIFF SANDY**
   RICHARD FEENEY, an individual;          **HACKETT**
13 ARTHUR PETRIE, an individual; TRP
   ENTERTAINMENT, LLC, a Nevada limited
14 liability company, PLAYLV GAMING
   OPERATION, LLC d/b/a PLAZA HOTEL
15 AND CASINO, a Nevada limited liability
   corporation; BROADWAY BOOKING
16 OFFICE NYC, LTD, a New York
   corporation,
17
                Defendants.
18
   RICHARD FEENEY, an individual;
19 ARTHUR PETRIE, an individual; TRP
   ENTERTAINMENT, LLC, a Nevada limited
20 liability company, PLAYLV GAMING
   OPERATION, LLC d/b/a PLAZA HOTEL
21 AND CASINO, a Nevada limited liability
   corporation; BROADWAY BOOKING
22 OFFICE NYC, LTD, a New York
   corporation,
23
                Counterclaimants,
24
   vs.
25
   SANDY HACKETT, an individual
26
                Counter-Defendant.
27

28
                                          1.

1    Defendants/Counterclaimants Richard Feeney, Arthur Petrie, TRP Entertainment,

2   LLP ("TRP"), PlayLV Gaming Operation, LLC d/b/a Plaza Hotel and Casino ("PlayLV"),

3   and Broadway Booking Office NYC, Ltd. ("Broadway") (hereinafter collectively,

4   "Defendants") hereby move to compel the deposition of Plaintiff/Counter-Defendant Sandy

5   Hackett (hereinafter "Plaintiff" or "Hackett") pursuant to Rule 30 of the Federal Rules of

6   Civil Procedure.  Plaintiff has refused to appear for deposition unless Defendants obtain

7   new counsel, demanding that Defendant's present counsel is conflicted from representing

8   Defendants and must be disqualified.  However, Plaintiff has no legal basis for demanding

9   the disqualification of Defendants' counsel, and his deposition should be compelled by this

10   Court.

11    This Motion is made pursuant to Rules 30 and 37 of the Federal Rules of Civil

12   Procedure and is based upon the attached memorandum of points and authorities, the

13   Declarations of Mark G. Tratos (the "Tratos Decl.") and F. Christopher Austin (the "Austin

14   Decl."), the papers and pleadings on file herein, and any oral argument permitted by this

15   Court.

16    DATED this  7th  day of May, 2010.

17                                                    Respectfully submitted,

18                                                    GREENBERG TRAURIG, LLP

19

20                                                    By: F. Christopher Austin_____

21                                                    MARK G. TRATOS, ESQ.
                                                     Nevada Bar No. 1086
22                                                    F. CHRISTOPHER AUSTIN, ESQ.
                                                     Nevada Bar No. 6559
23                                                    PETER H. AJEMIAN, ESQ.
                                                     Nevada Bar No. 9491
24                                                    GREENBERG TRAURIG, LLP
                                                     3773 Howard Hughes Pkwy., Ste 400 North
25                                                    Las Vegas, Nevada 89169
                                                     Telephone: (702) 792-3773
26                                                    Facsimile: (702) 792-9002
                                                     *Counsel for Defendants*

27

28

Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

LV 419,088,593v3 5-7-10

## CERTIFICATION PURSUANT TO FED. R. CIV. P. 37(a)(2)(B)

Under Fed. R. Civ. P. 37(a)(2)(B), a party making a motion to compel discovery "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." The certification document must accurately and specifically convey to the court who, where, how and when the respective parties attempted to personally resolve the discovery dispute.  See Shuffle Master, Inc. v. Progressive Games, Inc., 170 F.R.D. 166, 170 (D. Nev. 1996).

In this instance, Defendants' counsel telephoned Plaintiff's counsel on May 6, 2010 and informed him that Defendants would file the instant Motion if Mr. Hackett did not consent to having his deposition in a reasonable timeframe.  (See Austin Decl., ¶ 3.) Plaintiff's counsel refused to make his client available for deposition unless Defendants' counsel withdrew from representation on the grounds that Defendants' counsel had formerly represented Plaintiff in an unrelated matter.  (See id., ¶ 4.)  Defendants' counsel disagreed, and noted that the prior representation was of Defendants at a time when Plaintiff was employed by, and aligned with, Defendants, concerned matters unrelated to the present action in which counsel never obtained any confidential information from Plaintiff and by which Plaintiff cannot be prejudiced in the instant matter.  (See id., ¶¶ 6-11.) As such, in Nevada, Plaintiff has no basis upon which to disqualify Defendants' counsel or to demand removal as a condition to setting the deposition of Mr. Hackett.

## I.    INTRODUCTION

Since before the inception of this case, Plaintiff Hackett has threatened to move to disqualify Defendants' counsel, claiming that Defendants' counsel had formally represented him.  (See Tratos Decl., ¶¶ 5-6.)  Defendants, TRP and Richard Feeney ("Feeney") have had a long-standing relationship with Defendants' counsel, Greenberg Traurig, LLP, and specifically with Mark Tratos, Esq. ("Tratos").  (See id., ¶ 7.)  During the course of such relationship, Defendants' counsel has represented Defendants in various unrelated matters.  Regarding these prior representations, there are two matters specifically at issue

3.

Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

where Plaintiff claims that he was represented by Defendants' counsel in his individual capacity (collectively the "Prior Matters") - the first is a meeting that took place between Tratos, Feeney, Arthur Petrie ("Petrie") and Hackett allegedly before the formation of TRP, and the second is a case captioned Barton Music Corp. v. TRP Entertainment, LLC (and a companion case Maraville Music Corp. v. TRP Entertainment, LLC, which two cases were eventually consolidated because they dealt with related issues.)   (See id., ¶¶ 8-13.) However, Defendants' counsel did not represent Plaintiff in his individual capacity in either of those matters.   Additionally, even if this Court finds that an attorney-client relationship was formed as between Defendants' counsel and Hackett in one or both of these Prior Matters, the issues in the matter at hand are not substantially related to the issues in those Prior Matters, and no confidential information was ever given in those Prior Matters (in fact none was given at all by Hackett) that could be used to disadvantage Plaintiff in the current matter.  Therefore, Defendants' counsel should not be disqualified from this case.

As discussed in more detail herein, the meeting between Tratos, Feeney, Petrie and Hackett, now alleged to have occurred prior to the formation of TRP, was represented to Tratos to have occurred post formation.   (See id., ¶ 8.)   Tratos, therefore, reasonably believed he was giving counsel on behalf of TRP, not on behalf of any individual, and that counsel concerned matters not substantially related to the instant case.  (See id., ¶¶ 8-9.)

Regarding the Barton/Maraville case, Plaintiff claims that Defendants' counsel's filing of pleadings in that matter on behalf of "Defendants" in the plural included representation of Hackett individually, since he was a named defendant, and automatically disqualifies Defendants' counsel from being adverse to Hackett in this matter.  (See Austin Decl., ¶¶ 6-7.)   However, Hackett never retained Defendants' counsel, nor was Defendants' counsel employed to retain Hackett.  Rather Defendants' counsel became co-counsel of record later in the case specifically on behalf of TRP to defend the company's interests in an unrelated dispute over music rights and royalties.   (See Tratos Decl., ¶¶ 11-12.)   To the extend Hackett's interests were aligned with TRP, his interests were defended, however, at no time did Tratos or the firm consider the representation to be on Hackett's behalf: there was

4.

Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

1   no separate engagement agreement with Hackett, no communications with Hackett or to
2   which Hackett was copied by the firm, and no confidential information received from
3   Hackett.  (See Tratos Decl., ¶¶ 12-13.)  As such, at no time during either Prior Matter did
4   Defendants' counsel consult with or learn anything that could prejudice Hackett in this
5   matter.  (See id., ¶¶ 9, 13.)

6       To date, Plaintiff has taken no action to back up his disqualification threat[1] and, for
7   many months after this case was filed, the Parties proceeded in the normal course of
8   litigation.  Only after Plaintiff's deposition was properly noticed and several weeks had
9   passed did he threaten a motion to disqualify in order to avoid being deposed.  (See Austin
10  Decl., ¶¶ 3-4.)

11      Over the past month, Plaintiff took the depositions of all Defendants and Defendant
12  representatives that Plaintiff requested.  Plaintiff posted no objection to the fact that
13  Defendants' counsel were present for, and defended, each and every one of those
14  depositions.  (See Austin Decl., ¶ 13.)   Additionally, on behalf of Defendants, Defense
15  counsel has reviewed and produced thousands of pages of documents responsive to the
16  numerous production requests served by Plaintiff, propounded discovery requests on
17  Plaintiff, filed pleadings and motions on behalf of Defendants, and have extensively
18  engaged Plaintiff's counsel in good faith negotiations and communications regarding the
19  prosecution and defense of this case.  (See id.)  At no time, has Plaintiff ever complained
20  that such actions or such representation prejudiced him in this matter.  (See id.)  Only when
21  he faced the prospect of meeting his own production deadline and a looming deposition
22  date, did Plaintiff condition further proceeding with his deposition on Defense counsel's
23  withdrawal.  (See id.)

24      This condition is unreasonable, severely prejudicial to Defendants, and should not
25  be countenanced.  Plaintiff has no lawful basis to demand Defense counsel's removal, and
26  he should be compelled to appear for deposition.  As such, Defendants respectfully request

27

28
_____
[1] Although in response to counsel's "meet and confer," precedent to the filing of this Motion, Plaintiff's counsel stated that he would now be preparing his own motion to disqualify.

Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

1    that the instant Motion be granted.

2    **II.     STATEMENT OF RELEVANT FACTS**

3         This case primarily involves a dispute over (i) the copyright in a live musical stage

4    show called "The Rat Pack Is Back" (the "Show"), and (ii) the buyout of Plaintiff's interest in

5    the show by the members of the production company for the Show, TRP.  TRP is a Nevada

6    limited liability company that was formed in 2002 by Defendant Richard Feeney, Defendant

7    Arthur Petrie, and Plaintiff Hackett and has been the production entity and owner of the

8    Show since 2002.  During that time, TRP has been responsible for the production of the

9    Show in various venues in Las Vegas, Nevada, including most recently at the Plaza Hotel &

10   Casino, as well as a traveling production of the Show internationally and throughout the

11   United States.  The Show was created and written by Feeney, Hackett, and others with the

12   intent that it be a joint work of authorship for TRP's benefit, and it incorporates some

13   original material as well as a good deal of preexisting material to which neither Feeney nor

14   Hackett can claim any exclusive copyrights.

15        The three members of TRP conducted business under the original Operating

16   Agreement of TRP until March 25, 2005, when Feeney, Petrie and Hackett unanimously

17   executed an amendment to the Operating Agreement.  This amendment included an

18   optional buyout clause which set forth that the divorce of any member from his wife formed

19   the basis under which a member's entire interest in TRP could be purchased by the other

20   remaining members for a predetermined amount.  (See Exhibit C to Plaintiff's Complaint).

21        During the period of time between March 25, 2005 and September 2, 2006, Hackett

22   experienced personal circumstances leading to the separation and subsequent filing of

23   divorce papers.  On September 2, 2006, Feeney, Petrie, and Hackett, as the only three

24   members of TRP, agreed to effect the purchase of Hackett's interest in the company by

25   Feeney and Petrie for the total amount of Forty Thousand Dollars ($40,000.00) as

26   predetermined in the March 25, 2005 amendment to the TRP operating agreement.  Such

27   purchase was memorialized in writing, executed by all three members of TRP, in a simple

28   one-page Purchase Agreement that set forth the terms of Hackett's sale of his interest in

6.

Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

1   TRP to Feeney and Petrie.   (See Exhibit D to Plaintiff's Complaint.)   Full payment was

2   subsequently delivered and accepted by Hackett.   (See Hackett's Complaint ¶ 18).

3          While from that point forward Hackett was no longer an owner of TRP, he was still

4   involved with the Show as a producer and performer.   Later, Hackett became discontented

5   with TRP and the production and direction of the Show and manifested that discontent in

6   ways that were counterproductive to the continued success of the Show, including

7   Hackett's agitation of employees, his use of corporate opportunities for his and his wife's

8   personal benefit, and his neglect of his responsibilities.   (See Complaint ¶ 19).   As such, on

9   September 9, 2009 TRP effectively terminated Hackett's involvement in the Show.

10         In retaliation for his dismissal, Hackett now claims for the first time that he alone

11   wrote the Show, and therefore, is sole owner of the copyright thereto and that Defendants

12   must immediately cease performing.   In fact, unbeknownst at the time to the other

13   members of TRP, on June 7, 2005, Hackett secretly filed his own copyright application with

14   the United States Copyright Office for the work titled "The Tribute To Frank, Sammy, Joey,

15   and Dean," with an alternate title included on the electronic copyright record of "The Rat

16   Pack returns in the tribute to Frank, Sammy, Joey & Dean."   This application subsequently

17   matured into United States Copyright Registration No. PA 1-284-402.   (See Exhibit A to

18   Plaintiff's Complaint.)   Tellingly, Hackett never asserted his alleged sole copyright

19   ownership of the Show until after he was dismissed, retained counsel, and filed his

20   Complaint against Defendants.

21         While Plaintiff's counsel has raised the issue of seeking to disqualify Defendants'

22   counsel from the outset of this case, until now, that threat has not hampered discovery, any

23   motion practice, or the negotiations and interactions of counsel regarding the prosecution

24   or defense of this case. (See Austin Decl., ¶¶ 5-13.)  Defendants have produced thousands

25   of documents, propounded discovery on Plaintiff, noticed the deposition of Hackett, filed

26   motions to quash and sought protective orders on behalf of Defendants, and have

27   defended the depositions of Defendants TRP (Feeney), Petrie, and PlayLV (Travis

28   Anderson).  (See id.).  At no time has Plaintiff alleged or complained that any such activities

Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

7.

1   or representation by Defendants' counsel prejudiced or harmed him in any manner or that

2   such representation was barred by any prior representation by Defendants' counsel.  (See

3   id.)

4        The apparent basis for Plaintiff's demand to disqualify Defendants' counsel is that

5   Greenberg Traurig, LLP ("GT") and Quirk & Tratos ("Q&T"), which two entities merged into

6   the same firm, GT, in 2005, along with Mark G. Tratos as an attorney formerly with Q&T

7   and now a principal shareholder at GT (collectively referred to as "Defendants' counsel"),

8   represented the corporate entity TRP in various unrelated legal matters while Hackett was

9   still involved with and employed by the company.  (See Tratos Decl., ¶¶ 8, 11.)  Based on

10  this representation of the corporate entity TRP, Plaintiff wrongly believes that he is entitled

11  to disqualify GT as counsel for Defendants in this litigation.  However, as evidenced by the

12  written communications between counsel attached to the Declaration of Mark Tratos

13  hereto, Defendants' counsel did not actually represent Hackett in his individual capacity or

14  learn anything from Hackett that could prejudice him in this case.  With regard to Hackett,

15  the only representation undertaken by Defendants' counsel was as counsel for the

16  corporate entity TRP.  (See id., ¶¶ 8, 12.)  Any representation of Hackett was incidental and

17  only in his capacity as an affiliate and employee of TRP.  (See id.)

18       Again, as set forth below, the Nevada Rules of Professional Conduct and supporting

19  case law clearly show that when an attorney represents a corporate entity, without a clear

20  agreement to the contrary, the attorney's duties and representation are to the corporate

21  entity, not to the individual owners, members, managers, affiliates or shareholders.

22  Additionally, under such circumstances, an attorney may continue representing the

23  corporate entity as against a former owner, member, manager or shareholder of the

24  company.

25       As evidenced by the communications between counsel attached to the Declaration

26  of Mark Tratos hereto, Defendants' counsel attempted to make this clear to Plaintiff.

27  Additionally, on several occasions, Defendants' counsel asked Plaintiff to produce any

28  evidence that would tend to show representation of Hackett in his personal capacity.  (See

8.

LV 419,088,593v3 5-7-10

Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

1    Tratos Decl., ¶ 6.)  Plaintiff never produced any such evidence.[2]  (See id.)

2    **III.   LEGAL ARGUMENT**

3      **A.   Standard of Review**

4        Under the Federal Rules of Civil Procedure, parties in civil litigation have the right to

5 request and obtain documents and deposition testimony.   Rule 30(a)(1) specifically

6 provides that a "party may, by oral questions, depose any person, including a party, without

7 leave of Court."  Pursuant to Fed. R. Civ. P. 37(a), parties may file motions to compel if the

8 other party fails to comply with the requirements set forth in the Federal Rules of Civil

9 Procedure, including for failure to attend a deposition.

10      **B.   Plaintiff Cannot Disqualify Defendants' Counsel**

11        Plaintiff's sole reason for refusing to appear for deposition is his claim that he was

12 previously represented by Defendants' counsel.   Based on that allegation, Plaintiff has

13 been threatening to seek to disqualify Defendants' counsel since before this case was even

14 filed.  (See Tratos Decl., ¶ 6.)  Despite those persistent threats, Plaintiff has taken no action

15 on them, even though the Parties and their counsel have been fully engaged in this matter

16 for over six months.  Not until weeks after his deposition was noticed did Plaintiff refuse to

17 proceed unless Defendants' counsel was disqualified or replaced.  (See Austin Decl., ¶¶ 3-

18 4.)

19        Disqualification of a party's counsel is "a drastic measure which courts should

20 hesitate to impose except when absolutely necessary."  In-N-Out Burger v. In-N-Out Tire &

21 Auto, Inc., 2008 WL 2937294, *2 (D. Nev. 2008) (quoting Brown v. Eighth Jud. Dist. Ct.,

22 116 Nev. 1200, 1205 (Nev. 2000)) (emphasis added).  For a disqualifying conflict to exist

23 under Nevada law, the party seeking disqualification must establish three elements: (1) that

24 he had an attorney-client relationship with the lawyer; (2) that the former matter and current

25 matter are substantially related; and (3) that the current representation is adverse to the

26 party seeking disqualification.  See Nevada Yellow Cab Corp. v. Eighth Jud. Dist. Ct., 123

27 

28      [2] Plaintiff has additionally served subpoenas on GT, Q&T, and Mr. Tratos that sought confidential, irrelevant, and attorney-client privileged information.  Defendants have filed a motion to quash those subpoenas, which has been fully briefed and is currently pending before this Court.

Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

LV 419,088,593v3 5-7-10

Nev. 44, 50, 152 P.3d 737, 741 (Nev. 2007).  In this instance, Plaintiff cannot establish these elements.

1.   Plaintiff Had No Attorney-Client Relationship with<br>Defendants' Counsel.

The threshold for establishing an attorney-client relationship is fairly low for a disqualification determination.  Essentially, an attorney-client relationship may be found "when a person has a reasonable belief that a lawyer was protecting that person's interests…."  Restatement of the Law Governing Lawyers § 14.

Despite this low threshold, if Mr. Hackett can meet it at all, it is by the slimmest of margins.  In the two Prior Matters where Plaintiff alleges Defendants' counsel represented him, Hackett's belief that GT was protecting his personal interests as separate and apart from Defendant TRP's is unreasonable.

In the first matter, Feeney, Petrie and Hackett represented to Tratos that they had formed TRP and were seeking advice on behalf of TRP, and, as a result, they received counsel exclusively for TRP.  (See Tratos Decl. ¶ 8.)  It is unreasonable for Hackett to believe that such a contact with Defendants' counsel created an attorney-client relationship as between him personally and the firm.

In the second matter, the consolidated Barton/Maraville matter, Defendants' counsel was engaged, exclusively by and on behalf of TRP, to provide expertise with regard to grand rights in an alleged infringement of three specific musical compositions.  (See Austin Decl., ¶ 9.)  Hackett never separately engaged GT, never communicated with any attorney at GT on the matter, or ever conveyed in any way that he believed he was being represented by GT.  (See Tratos Decl., ¶¶ 11-13.)  To the contrary, there are no records of Hackett ever attending any meeting with Defendants' counsel on this matter, of Defendants' counsel ever filing any pleadings on Hackett's personal behalf, of any communications ever being sent or copied to Hackett, or of any work ever being performed on Hackett's behalf.  (See id.; see also Austin Decl., ¶ 9.)  Indeed, aside from the caption of the matter, Hackett does not appear in any manner in the file for that case at all.  (See id.)  It is unreasonable

Suite 400 North, 3773 Howard Hughes Parkway<br>Las Vegas, Nevada 89109<br>(702) 792-3773<br>(702) 792-9002 (fax)

10.

1  for Hackett to believe that in the absence of any agreement, counsel or communication with

2  him, that the mere fact that GT filed pleadings on behalf of "Defendants" in the plural

3  established an attorney-client relationship with him personally.

4        a.     No Attorney-Client Relationship Was Formed at the

5           Alleged Pre-Formation of TRP Meeting with Tratos.

6       Plaintiff's contention that he was represented in his individual capacity by Tratos by

7  seeking legal advice on behalf of a business entity that - contrary to his representations at

8  the time - was then in the process of formation is unfounded.  Courts have held that the

9  "entity rule" - the doctrine that representation of an entity does not automatically entail

10  representation of its members - applies retroactively to the seeking of legal advice in

11  furtherance of the formation of a corporation.  See, e.g., Jesse by Reinkecke v. Danforth,

12  169 Wis.2d 229, 241 (Wis. 1992).  For example, in Danforth, the court held that where a

13  person retains a firm for the purpose of organizing an entity, the firm's involvement is

14  directly related to that purpose, and when that entity is ultimately incorporated, the entity

15  rule retroactively applies.  Danforth, 169 Wis.2d 229, 241; see also Manion v. Nagin, 394

16  F.3d 1062, 1069 (8th Cir. 2005) (recognizing this case law but noting that where an

17  individual sought individual advice as well as pre-formation advice on behalf of corporation,

18  the individual had an attorney-client relationship with incorporating attorney).  The court in

19  Danforth found that the individual shareholder defendants, who had retained the firm for the

20  purposes of incorporating, had no independent attorney-client relationship sufficient to

21  cause a conflict of interest between individual defendants and firm's representation of the

22  company.  169 Wis.2d 229, 244-45.

23       Although the Danforth case dealt with a firm retained for the purpose of formation of

24  the entity, there is no reason to think that the rule would not extend to legal advice on

25  behalf of the to-be-formed entity outside of the formation context, so long as no individual

26  legal advice was given.  The court noted that "the retroactive application of the entity rule

27  simply gives the person who retained the lawyer the status of being a corporate constituent

28  during the period before actual incorporation, as long as actual incorporation eventually

Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

11.

1   occurred."  Id. at 241.

2       Here, nearly a decade ago Feeney introduced Tratos to Hackett and Petrie,

3   representing that they were his partner members in a production company which Tratos

4   later learned was TRP.  (See Tratos Decl., ¶ 8.)  Although Plaintiff and the individual

5   defendants did not employ Tratos or his firm for the purpose of forming a business entity,

6   the alleged consultation with Tratos pre-formation was purely on behalf of TRP.  (See id.)

7   In fact, Tratos was informed that Feeney, Petrie and Hackett had already entered into an

8   agreement on their respective ownership interest in the company, and that he was being

9   engaged to render advice to an existing company, not to any of the individual members.

10  (See id.)  The sole purpose of seeking Mr. Tratos' counsel was to further the business

11  interests of TRP.  Specifically, the members of TRP were looking for advice on how they

12  could use the names of the famous performers Frank Sinatra, Sammy Davis, Jr., Joey

13  Bishop, and Dean Martin as part of the title of their proposed tribute show to the original

14  "Rat Pack" without running afoul of Nevada's Right of Publicity Act, an act with which

15  Tratos has particular experience.  (See id., ¶ 9.)  Plaintiff neither sought nor received legal

16  advice in his individual capacity.  (See id., ¶¶ 8-9.)  Moreover, the retainer agreement

17  eventually signed was with TRP - not with Hackett, Feeney, or Petrie - and all payments for

18  the legal work performed were by TRP, not the individuals.  (See id., ¶ 11.)

19      Hackett is an experienced businessman and a sophisticated entertainer and

20  performer.  The work that he does routinely involves lawyers and the retention of law firms.

21  Hackett knows how retention of an attorney works, and he understood that Tratos, Q&T,

22  and GT were acting as TRP's attorneys, not as his own.  As such, there is no reasonable

23  basis for Hackett to believe that he established an attorney-client relationship with the firm,

24  and no basis for disqualification arising from this initial consultation.

25              b.      Defendants' Counsel Represented TRP In the

26                      Barton/Maraville Case.

27      Defendants' counsel was retained to represent TRP in the Barton/Maraville case,

28  and while Plaintiff was individually named by the opposing party as a defendant along with

12.

Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

Feeney and TRP, no attorney-client relationship was actually formed as between Plaintiff and Defendants' counsel in that matter.  The general rule in Nevada and elsewhere is that "a lawyer representing a corporate entity represents only the entity, not its officers, directors, or shareholders, and not any related entities such as parents, subsidiaries or sister companies." Waid v. Eighth Judicial District Court, 119 P.3d 1219, 1223 (Nev. 2005); see also, Burnett v. Rowzee, 2007 WL 2767936, at *5 (C.D. Cal.) (the rule is that an attorney can represent a corporation in a dispute against a former officer from whom he received confidential information).   Additionally, notwithstanding whether confidential information was actually acquired by the attorney, for disqualification to be appropriate, the attorney must have in fact previously represented the party who is now seeking disqualification.  See Waid, 119 P.3d at 1223.

Here, all Plaintiff can rely upon is the technical argument that references in pleadings to "Defendants" in the plural established an attorney-client relationship.  In reality, Defendants' counsel was retained to represent TRP's interests, and any representation of Hackett was merely incidental to the representation of TRP to the degree that that Hackett's interests were aligned with Defendants' counsel's representation of TRP.  (See Tratos Decl., ¶¶ 11-13.)  Defendants' counsel never represented to Hackett that he was being represented in his individual capacity, and Hackett never requested it.  There is no engagement letter as between Hackett and Defendants' counsel, no evidence of any communications between Hackett, no evidence of any work ever being performed on Hackett's individual behalf, and no indication that Hackett ever paid a legal bill of Defendants' counsel.  (See id., ¶¶ 12-13.)  To the contrary, all communications were with the members of TRP, and Hackett was not a member of TRP at that time.  As such, Hackett cannot reasonably believe that he was being personally represented by Defense counsel.  Absent a reasonable basis for his allegation of prior representation, and absent any evidence of such a representation, there can be no conflict with the instant matter.

/ / /

/ / /

Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

13.

Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

2.   <u>This Matter Is Not Substantially Related to Any Other Matter in</u>
     <u>Which Defendants' Counsel Represented TRP</u>.

The second factor for determining whether counsel can be excluded from representation on a matter is whether the current and former matter are "substantially related."  The Supreme Court of Nevada has established a three-part test for determining whether a current and former matter are "substantially related" for the purpose of disqualifying counsel: (1) the court must make a factual determination regarding the scope of the former representation; (2) the court must evaluate whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters; and (3) the court must determine whether the alleged confidential information is relevant to the issues in the present litigation.  <u>See</u> <u>Wald v. Eighth Jud. Dist. Ct.</u>, 119 P.3d 1219 (Nev. 2005).

By its nature, the determination of the scope of former representation is extremely fact-intensive.  Perhaps the closest case factually to the instant matter is <u>Wild Game Ng, LLC v. Wong's International (USA) Corp.</u>, 2006 WL 3434379 (D. Nev. 2006), wherein an individual named Mr. Ng was seeking to disqualify opposing counsel.  In that case, the law firm Mr. Ng was seeking to disqualify represented some entities that Mr. Ng was involved with but had never represented him personally, as evidenced by the engagement letter and the payment of bills by those entities and not by Mr. Ng personally.  <u>See</u> <u>id</u>. at *4.  In that matter, the court refused to disqualify opposing counsel.

As applied to the present matter, GT, Q&T, and Tratos were never retained or engaged to represent Plaintiff Hackett in his individual capacity in either the Prior Matters or at any time.  (<u>See</u> Tratos Decl., ¶¶ 8, 12.)  As such, there could be no scope of representation as to the Prior Matters outside of Hackett's status as a former member and employee of TRP, as Defendants' counsel only represented Defendant TRP.  (<u>See</u> <u>id</u>.) Again, Hackett never entered into an engagement agreement with, or paid any legal bills of Defendants' counsel; only TRP did these things.  Any and all communications between counsel and Hackett were de minimus, as Defendant Feeney was the primary point of

14.

Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

1  contact for TRP.  (See id, ¶¶ 8, 13.)

2      With regard to the inquiry as to whether confidential information would have been

3  exchanged, courts have held that a "realistic" approach is best.  See In-N-Out Burger, at *2

4  (quoting Robbins v. Gillock, 862 P.2d 1195, 1197 (Nev. 1993)).   In other words, if

5  Defendants' counsel had represented Hackett in the past, what sort of confidential

6  information would have been given to counsel to defend any action brought against

7  Hackett?   In this case, any information given to Defendants' counsel by Hackett would

8  certainly not pertain to the underlying copyright in the Show's script at issue in this lawsuit.

9  After all, Hackett filed for that copyright himself in 2005 without the knowledge of TRP,

10  Feeney, Petrie, or counsel.  (See Exhibit A to Plaintiff's Complaint.)

11      Finally, this Court must examine whether confidential information from prior matters

12  would be relevant in the present matter.  According to the Supreme Court of Nevada, a

13  "superficial similarity between the two matters is not sufficient to warrant disqualification;

14  rather, the focus is properly on the precise relationship between the present and former

15  representation."  Waid, 119 P.3d at 1223.  For instance, in Robbins v. Gillock, 862 P.2d

16  1195 (Nev. 1993), the Supreme Court of Nevada held that matters were not substantially

17  related even though both concerned medical malpractice.  The court determined that the

18  instances of malpractice were wholly distinct and that any contention that the attorney

19  obtained disadvantageous confidences was "pure speculation."  Id.

20      Similarly, here, even if this Court finds that Defendants' counsel did somehow

21  represent Plaintiff Hackett individually in the past, counsel did not gain any information that

22  would be instructive or helpful in this case.  (See Tratos Decl., ¶ 13.)  In his Opposition to

23  the Motion to Quash, Hackett accuses Defendants' counsel of representing him "in at least

24  2 copyright actions."  (Opposition to Motion to Quash, at 2.)  Even if this were true, those

25  two consolidated actions (the Barton/Maraville case as discussed above) involved TRP's

26  right to use three specific songs owned by Barton/Maraville in the Show.  (See Tratos

27  Decl., ¶ 11.)  Those matters have no relation to the copyright infringement action brought

28  by Hackett here or to the counterclaims asserted by Defendants.

Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

The same is true with regard to the buyout claims.  In his Complaint, Hackett claims either that the buyout of his interest never occurred or that he bought back his rights at a latter time.  Neither of the two Prior Matters concern this claim.  The initial consultation occurred prior to the subsequent agreement to buyout Hackett's interests which occurred years later and did not concern any provision of the agreement between the members. Indeed Tratos was informed that the agreement between the members had already been reached, and he was neither asked to provide nor provided any counsel with regard to such an agreement.  Similarly, the later representation of TRP in the Barton/Maraville matter on music rights also raised no issues regarding any buyout of Hackett's interest.

As has been repeatedly stated to Plaintiff's counsel, Defendants' counsel has no information related to the underlying copyright at issue in this lawsuit.  Plaintiff did not utilize Defendants' counsel in any way to apply for and obtain that copyright.  He never provided counsel with a copy of the script for which he claims he received a copyright; and he never disclosed why he believed he was entitled to personally take all the rights in a script for TRP's show.  To the contrary, he secretly applied for that copyright in 2005 for a show that TRP had been producing for years without the knowledge or approval of TRP or its counsel, and while he was still a member of and a fiduciary for TRP.

3.   Information From the Prior Matter Does Not Harm Hackett in This Matter.

In determining whether the current representation is adverse to Hackett, this Court must again determine whether confidential information given in prior representation could be used to disadvantage Hackett in the current matter.  See In re North American Deed Co., 334 B.R. 443, 445 (Bankr. D. Nev. 2005).  This prong too must fail, as there was neither any confidential information given by Hackett to Defense counsel in the Prior Matters, nor could any such information, had there ever been any, have been used in this matter to disadvantage Hackett.  Neither of the Prior Matters raised any issue that is substantially related to the issues in the instant matter.  Accordingly, there would never have been a reason for Hackett to disclose any confidential information that could be used

16.

1    to disadvantage him in this matter.   Hackett Simply has no grounds to disqualify
2    Defendants' counsel.

3        **C.**    **Plaintiff Has Waived His Right To Disqualify Defendants' Counsel**

4        Even if this Court were inclined to find a conflict of interest here, Plaintiff has waived
5    the right to object to such a conflict.   It is well-settled in the Ninth Circuit that "[w]here a
6    party fails to make a motion to disqualify opposing counsel in a timely manner, the court
7    may deem that party to have waived that right."   Wild Game NG, LLC v. Wong's Intern.
8    (USA) Corp., 2006 WL 3434379, 4 -5  (D. Nev. 2006), citing Trust Corp. of Montana v.
9    Piper Aircraft Corp., 701 F.2d 85, 87-88 (9th Cir. 1983).   The Nevada Supreme Court has
10   recognized this as well.  See Nevada Yellow Cab Corp. v. Eighth Judicial Dist. Court ex rel.
11   County of Clark,  123 Nev. 44, 49-50, 152 P.3d 737, 740 - 741 (Nev. 2007).   Courts imply
12   waiver from a long delay in objection despite knowledge of the conflict.   See Wild Game
13   Ng, 2006 WL 3434378, 4-5 (noting other courts' implying waiver after a nine month delay, a
14   five month delay, and a two year delay, and denying a motion to disqualify brought more
15   than a year from the time Plaintiff learned of the potential conflict); but see Yellow Cab, 123
16   Nev. 44, 49-50 (permitting disqualification two years into the litigation where litigants had
17   agreed to postpone the objection until after mediation was attempted).

18       Here, Plaintiff has known of this alleged "conflict" from since before filing his
19   Complaint.  (See Tratos Decl., ¶ 5.)  Nevertheless, Plaintiff has permitted the case to move
20   forward in the ordinary course, including Defendants' production of thousands of pages of
21   documents, and Defendants' counsel's filing of motions, propounding of discovery
22   requests, and defense of three depositions - all without objection.  (See Austin Decl., ¶ 13.)
23   Plaintiff's delay in raising this issue after Defendants' counsel has spent hundreds of hours
24   reviewing thousands of documents and extensively consulting with Defendants and others
25   severely prejudices Defendants and increases the costs associated with any transfer to
26   new counsel.

27       Moreover, the delay itself in a very active litigation evidences the actual lack of any
28   prejudice to Hackett by GT's representation of Defendants in this matter.  Indeed, even at

Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

1   the meet and confer of counsel prior to the filing of this Motion, Plaintiff's counsel indicated

2   that there would likely be no issue with the transfer of Defendants' counsel's work product

3   to any replacement counsel.  (See Austin Decl., ¶ 14.)  While this comment was probably

4   meant as a concession to try and mitigate the harm Plaintiff's counsel knows such a

5   transition would bring, it also amounts to a veritable acknowledgement that Hackett would

6   not be prejudiced by the disclosure of such work product, including any client confidences

7   (were there any from Hackett) to any subsequent counsel.  (See id.)  This is because

8   Plaintiff knows he never disclosed anything in the Prior Matters at all, let alone anything

9   that could prejudice him in the present case.  (See id.)

10      The threat of disqualification to avoid or delay discovery is simply a tactic to unfairly

11  prejudice Defendants in the instant matter and should be rejected.  Plaintiff waited until

12  days before Hackett's scheduled deposition to assert this alleged objection.  As the Wild

13  Game Ng court noted:

14          the court finds it difficult to believe that Plaintiff could not have
            made this motion earlier, were Plaintiff truly concerned about a
15          conflict of interest between Plaintiff and Defense counsel.  Instead
            of making a timely motion, Plaintiff waited until the eve of Mr. Ng's
16          deposition to object to Defendant's choice of counsel.  Thus, the
            court finds that the Plaintiff's motion [to disqualify opposing counsel]
17          should be denied on grounds of undue delay.

18  Wild Game NG, 2006 WL 3434379, 4-5 (emphasis added).  Here too, this Court should find

19  that any objection to Defendants' counsel serving as defense counsel in this matter has

20  been waived by Plaintiff's failure to timely object.

21      **D.    Hackett Should Be Compelled to Appear for Deposition.**

22      Plaintiff Hackett refuses to appear for deposition unless Defendants' counsel is

23  replaced, but, as demonstrated herein, he has no rational basis for this demand.

24  Defendants have permitted their depositions to go forward.   They have produced

25  voluminous documents to Plaintiff.  They have and are engaging in discovery in good faith.

26  Now on the eve of deadlines for Plaintiff's production and days before a scheduled

27  deposition of Hackett, Plaintiff claims it cannot proceed.  Such action is unwarranted, and

28  Defendants respectfully request that this Court find no basis for disqualification of

Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

18.

1   Defendants' counsel and order Plaintiff to appear for his deposition.

2               **E.    Defendants Are Entitled to Their Attorneys' Fees and Costs.**

3       Pursuant to Rule 37 of the Federal Rules of Civil Procedure:

4           If the motion [to compel] is granted - or if the disclosure
            or requested discovery is provided after the motion was
5           filed - the court must, after giving an opportunity to be
            heard, require the party or deponent whose conduct
6           necessitated the motion, the party or attorney advising
            that conduct, or both to pay the movant's reasonable
7           expenses incurred in making the motion, including
            attorneys' fees.
8

9   Fed. R. Civ. P. 37(a)(5).

10      In the instant case, Defendants have demonstrated that Plaintiff has no rational

11  basis for refusing to permit his deposition from going forward.  Defendants have tried to

12  resolve the instant dispute without intervention from this Court.  Plaintiff rejected those

13  attempts.  As such, Defendants request that this Court award them their reasonable

14  attorneys' fees and costs incurred related to filing and prosecuting this Motion.

15  **IV.    CONCLUSION**

16      For each of the reasons identified above, Defendants respectfully request that the

17  instant Motion be granted, that this Court find no basis for the disqualification of

18  Defendants' counsel, compel the deposition of Sandy Hackett within a reasonable

19  timeframe, and award Defendants their reasonable expenses, including attorneys' fees

20  incurred in making this Motion.

21      DATED this   7th   day of May, 2010.

22                                  Respectfully submitted,

23                                  GREENBERG TRAURIG, LLP

24                                  /s/ F. Christopher Austin

25                                  Mark G. Tratos (Nevada Bar No. 1086)
                                    F. Christopher Austin (Nevada Bar No. 6559)
26                                  Peter H. Ajemian (Nevada Bar. No. 9491)
                                    3773 Howard Hughes Pkwy, Suite 400N.
27                                  Las Vegas, NV  89169
                                    Counsel for Defendants
28

Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

LV 419,088,593v3 5-7-10

1

## **CERTIFICATE OF SERVICE**

2       I hereby certify that on  May 7, 2010, I served the foregoing DEFENDANTS'

3   MOTION TO COMPEL THE DEPOSITION OF PLAINTIFF SANDY HACKETT via the

4   Court's CM/ECF filing system to all counsel of record and parties as listed.

5

6                                        _/s/  F. Christopher Austin_____
                                         An employee of GREENBERG TRAURIG, LLP

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

20.

LV 419,088,593v3 5-7-10