1  KING, HOLMES, PATERNO & BERLINER LLP
   HOWARD E. KING, ESQ., CA STATE BAR NO. 077012
2       (PRO HAC VICE)
   SETH MILLER, ESQ., CA STATE BAR NO. 175130
3       (PRO HAC VICE)
   1900 AVENUE OF THE STARS, 25TH FLOOR
4  LOS ANGELES, CALIFORNIA 90067-4506
   E-MAIL:   MILLER@KHPBLAW.COM
5  TELEPHONE: (310) 282-8989
   FACSIMILE:  (310) 282-8903
6
   WEIDE & MILLER, LTD.
7  MARK BORGHESE, ESQ., NV STATE BAR NO. 6231
   RYAN R. GILE, ESQ., NV STATE BAR NO. 8807
8  7251 WEST LAKE MEAD BOULEVARD, SUITE 530
   5TH FLOOR, BANK OF NEVADA BUILDING
9  LAS VEGAS, NEVADA 89128
   E-MAIL:   MBORGHESE@WEIDEMILLER.COM
10 E-MAIL:   RGILE@WEIDEMILLER.COM
   TELEPHONE: (702) 382-4804
11 FACSIMILE:  (702) 382-4805

12 Attorneys for Plaintiff/Counter-Defendant
   SANDY HACKETT
13

14              UNITED STATES DISTRICT COURT

15                  DISTRICT OF NEVADA

16 SANDY HACKETT, an individual,        CASE NO. 2:09-CV-02075-RLH-LRL
                                        Hon. Roger L. Hunt
17              Plaintiff,
                                        **OPPOSITION TO DEFENDANTS/**
18      vs.                             **COUNTERCLAIMANTS' MOTION**
                                        **TO COMPEL THE DEPOSITION**
19 RICHARD FEENEY, an individual;       **OF PLAINTIFF SANDY HACKETT**
   ARTHUR PETRIE, an individual; TRP
20 ENTERTAINMENT, LLC, a Nevada         Action Commenced: October 28, 2009
   limited liability company, PLAYLV
21 GAMING OPERATIONS, LLC d/b/a
   PLAZA HOTEL AND CASINO, a
22 Nevada limited liability corporation,
   BROADWAY BOOKING OFFICE
23 NYC, LTD, a New York corporation,

24              Defendants.

25 AND RELATED COUNTERCLAIMS.
26

27 / / /

28 / / /

3616.060/349725.1

# **TABLE OF CONTENTS**

                                                                          **Page**

I. INTRODUCTION ...........................................................................................1

    A.    The Prior Representation of Hackett.................................................1

    B.    No Waiver of the Conflict or the Right to Disqualify While
           Struggling to Obtain Hackett's Client Files To Secure The Full
           Evidence of the Conflict............................................................2

    C.    Hackett is Filing Concurrently His Motion to Disqualify, and for
           Related Relief.............................................................................4

    D.    GT's Unsupported Concept of "Faux" Representation of a Party..........5

II. THE PRIOR REPRESENTATION IS SUBSTANTIALLY RELATED ..............5

    A.    The 2002 Counseling ...................................................................6

    B.    The Barton Music Cases ...............................................................7

III. DEFENDANT'S REQUEST FOR SANCTIONS IS UNSUPPORTED ..............9

IV. CONCLUSION.............................................................................................10

# TABLE OF AUTHORITIES

**Page**

CASES

*In-N-Out Burger v. Tire & Auto, Inc.*
    2008 WL 2937294 (CD. Nev.) ...............................................................8

*Jesse by Reinecke v. Danforth*
    169 Wis. 2d 229 (Wis. 1992) ................................................................8

*Manion v. Nagin*
    394 F. 3rd 1062 (8th Cir. 2005) ...............................................................8

*Miller v. Alagna*
    138 F. Supp. 2d 1252 (C.D. Cal. 2000) ...............................................2

*Waid v. Eighth Judicial Court District*
    121 Nev. 605, 119 P. 3d 1219 (2005) ..................................................5

*Woods v. Superior Court*
    149 Cal. App. 3d 931, 197 Cal. Rptr. 185 (1983) .............................9


RULES

Federal Rule of Civil Procedure, Rule 11 ...................................................5

Nevada Rule of Professional Conduct 1.16(d) .............................................1

Nevada Rule of Professional Conduct 1.9 ...................................................5

KING, HOLMES,
PATERNO
& BERLINER LLP

3616.060/349725.1

ii

Plaintiff/Counter-Defendant SANDY HACKETT ("Hackett" or "Plaintiff") hereby submits the following Opposition to Defendants/Counterclaimants' Motion to Compel the Deposition of Plaintiff Sandy Hackett as follows:

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

To be sure, Greenberg Traurig's ("GT") conflict of interest in representing Defendants in this action adverse to its former client, Plaintiff Sandy Hackett, is central to the present motion. GT has persistently violated several applicable Nevada Rules of Professional Conduct warranting its disqualification. GT also has stalled for months the diligent efforts of Hackett to secure his complete client files in the matters in which Mark Tratos ("Tratos"), GT and GT's predecessor in interest, Quirk & Tratos, represented and counseled Hackett.

Even as this brief is submitted, GT, Tratos and Quirk & Tratos still have not given full access, much less "surrendered" Hackett's files regarding such matters as required by the Nevada Rules of Professional Conduct 1.16(d) after termination of their representation of Hackett.

If Hackett were to be examined in deposition today, he would be disadvantaged by not knowing all the materials and information that are in **his** client files from the prior representations by these lawyers who formerly represented him.

### A.  The Prior Representation of Hackett

GT and its predecessors, including Tratos, have a conflict over having represented and counseled Hackett in at least two earlier matters. The first of those is the "2002 Counseling" of Messrs. Hackett, Richard Feeney ("Feeney") and Arthur Petrie ("Petrie") **before** TRP Entertainment, LLC ("TRP") was formed. The Hackett Declaration in Support of his Motion to Disqualify discusses that counseling in great detail, in contrast to the superficial and inaccurate description in the Tratos Declaration.

1    The second key representation of Hackett transpired during 2007 to 2008 in

2  the so-called "Barton Music Cases"[1] in which Tratos and GT represented Hackett as

3  **his attorney of record** (along with TRP and Feeney), **from the outset** – not late in

4  the lives of those cases, as Tratos declares.

5    Both the 2002 Counseling and the Barton Music Cases are "substantially

6  related" to the present action.[2]

7  **B.    No Waiver of the Conflict or the Right to Disqualify While Struggling to**

8         **Obtain Hackett's Client Files To Secure The Full Evidence of the**

9         **Conflict**

10    There has been no waiver of the conflict, or of the right to disqualify.  *Miller*

11  *v. Alagna*, 138 F. Supp. 2d 1252 (C.D. Cal. 2000).  Defendants try to twist their

12  obstruction of Hackett's efforts to obtain the full evidence of the conflict (so that he

13  can present the full evidence to the court) into being a waiver of such right.  This

14  argument must fail.

15    Defendants argue that they will be prejudiced if disqualified after stalling over

16  providing Hackett's files, on the theory that they spent time on the case.  This is like

17  the man who kills his parents who then pleads with a court at his sentencing hearing

18  to "take pity on me, for I am an orphan."

19  / / /

20

21  [1] These were two actions arising out of the same nucleus of operative facts.  In a

22  pre-emptive strike, TRP first sued Barton Music and other music licensing
    companies on August 7, 2007 in this courthouse over a dispute regarding copyright

23  claims involving the TRP show "Rat Pack Is Back".  GT and Tratos are co-counsel

24  of record on the complaint. On October 9, 2007 Barton Music (and other aligned
    companies) sued TRP, Hackett and Feeney. The motion to dismiss that action was

25  filed December 6, 2007 by GT, along with its co-counsel, Watson Rounds.

26  [2] There are other aspects of GT representing Hackett individually, as a member of

27  the TRP LLC, but for the sake of simplicity of presentation, Hackett relies here on
    these two prior circumstances of representation by Tratos and GT.

28

1    The "prejudice" of having responded to Hackett's discovery – largely

2    involving the client file matters – was hewn by the hands of Defendants and their

3    conflicted attorneys.  The self-inflicted prejudice to Defendants is minimal, in that

4    they have conducted no depositions to date.  They have not had to answer

5    interrogatories or requests for admissions, nor respond to the inevitable motions for

6    summary judgment on their counterclaims.  They have attended only three

7    depositions.[3]

8    Hackett raised the conflict before the lawsuit was filed and demanded access

9    to his files.  GT has ignored the obligation to provide those files.  See Ex. "1" to

10   Defendants' moving papers.  Initially, Tratos made the argument, before suit was

11   filed, that personal representation of Hackett was more than 5 years prior, as if that

12   time gap made any difference.[4]  Accordingly, promptly after discovery was

13   permitted in this case, Hackett served discovery upon GT, Tratos and Quirk &

14   Tratos to obtain those records.  Defendants moved to quash those subpoenas, with

15   no effort to meet and confer first.  That Motion ignored the true issues, which

16   Hackett addressed in his Opposition.  Hackett stated then, three months ago, that the

17   documents should be produced, and if not, a privilege log should be given and the

18   documents submitted for *in camera* review.[5]

19   Plaintiff also sought production of those same documents in discovery

20   propounded to Defendants.  Plaintiff has doggedly pursued efforts to obtain the

21   cooperation of Defendants and their counsel to obtain relevant documents, including

22   Hackett's own client files.  Defendants and their lawyers still have not produced the

23   complete files, and still offer unfounded excuses for not producing them, including

24

25   [3] The PMK of TRP (per Feeney, on Mar. 3 and 19); Petrie (April 21), and Plaza
     Hotel (April 22–less than a half-day).

26   [4] Tratos' explanation of his counseling of Hackett was odd, and misstated his role.

27   [5] This motion has been briefed fully since March 5, 2010.

28

1  the indefensible notion that to represent a party client in United States District Court

2  in the Barton Music Cases carries with it no real professional or legal duties to such

3  client.

4      Having still been thwarted in obtaining Hackett's complete client files,

5  despite all the effort over the last several months,[6] Plaintiff's counsel advised on

6  April 23, 2010, that it would not permit the deposition of Sandy Hackett to proceed,

7  on the inconvenient, unilaterally set date of May 5.  The primary reason given was

8  the conflict issue – including the failure to produce Hackett's own client files.  The

9  secondary reason was accommodation of Hackett's performance commitments;

10  May 5 was inconvenient.  Hackett's counsel advised that they would file Hackett's

11  motion to disqualify, and proceed with what he has been able to wrestle from GT so

12  far.  Defendants, however, were "first to file" on the issue, having now brought their

13  Motion to Compel.

14  **C.**   **Hackett is Filing Concurrently His Motion to Disqualify, and for Related**

15      **Relief**

16      Plaintiff is concurrently filing his own motion:

17      (a) to disqualify GT and Tratos,

18      (b)  to compel the deposition of Tratos incidental to the disqualification issue,

19      (c)  to require turnover of Hackett's complete client files, and

20      (d)  to bar the deposition of Hackett until such time as such relief is complied

21          with by GT.

22  That motion is more plenary than this Opposition in its presentation of the conflict

23  issues.  By this reference, Plaintiff incorporates the matters set out there, as further

24  opposition to the Motion to Compel Hackett's deposition.  That Motion sets out the

25  background facts alleged in the complaint, the causes of action and defenses alleged

26  ――――――――――――――――

27  [6]  Defendants have stalled and interfered with Plaintiff's discovery on other matters
    as well; See King Decl. generally.

28

1 │ in the present action, and the relationship between the present action and the prior
2 │ representation of Hackett by Tratos and GT.

3 │      There may be a need to file under seal Hackett's Motion and supporting
4 │ declaration, or portions of its supporting papers, which might delay briefly the filing
5 │ of it until shortly after the filing of this Opposition.

6 │ **D.**    **GT's Unsupported Concept of "Faux" Representation of a Party**

7 │      In an effort to avoid the rule that a lawyer shall not represent interests adverse
8 │ to a former client on matters substantially related, GT has invented the manifestly
9 │ unsupportable position that its representation of Hackett in the Barton Music Cases
10 │ were "pretend" or "faux" appearances and representation of record.  GT and
11 │ Defendants assert that filings by GT in those cases with its member's names and
12 │ signatures on court filings, and the physical appearance of GT attorneys before the
13 │ court on behalf of Hackett – did not carry with them obligations imposed under Rule
14 │ 11 and other federal rules.  Despite repeated written request to GT for citation to any
15 │ legally recognized support for this novel notion, GT has ignored the inquiry and
16 │ failed to explain any conceivable legal support for this position.  No such authority
17 │ is cited in its Motion.  In persisting with this unfounded argument to the Court, GT
18 │ deepens its transgression, by misstating to the Court its role in the Barton Music
19 │ Cases.

20 │ **II.**

21 │ **THE PRIOR REPRESENTATION IS SUBSTANTIALLY RELATED**

22 │      As Defendants acknowledge, Rule 1.9 of the Nevada Rules of Professional
23 │ Conduct (adopted by this court in Local Rule 1A-1-7(a)) requires disqualification of
24 │ GT and Tratos if their prior representation of Hackett is substantially related to the
25 │ present action.  *Waid v. Eighth Judicial Court District*, 121 Nev. 605, 119 P. 3d
26 │ 1219 (2005).

27 │ / / /

28 │ / / /

1    The 2002 Counseling by Tratos and others, at what was then Quirk & Tratos

2 (now merged with GT), and  the later representation by Tratos and GT of Hackett in

3 the Barton Music Cases, are substantially related to the instant action.

4 **A.    The 2002 Counseling**

5    The 2002 Counseling involved Tratos, and other lawyers at his firm of Quirk

6 & Tratos (including Laurie Thompson, now at GT also), counseling Hackett,

7 Feeney and Petrie regarding the production of a show that they contemplated

8 producing, based on, or as a tribute to,  the so-called "Rat Pack." Feeney wanted to

9 make sure that they did not run afoul of any intellectual property issues involving

10 other competing "Rat Pack" shows.  They sought counsel from Tratos, who Feeney

11 told Hackett was knowledgeable in the area of intellectual property law, including

12 trademark copyright and exploitation of name and likeness.  Confidential

13 information about Hackett and his personal rights to exploit matters pertaining to

14 Joey Bishop, and his relationship with Rat Pack member Joey Bishop, were

15 discussed with Tratos in these counseling sessions.

16    At the time of the 2002 Counseling meetings, no limited liability company of

17 TRP existed.  TRP was not registered with the Nevada Secretary of State until

18 April 25, 2002.

19    That 2002 Counseling is substantially related to the very matters that are at

20 issue in this case, including Plaintiff's complaint and the counterclaims by TRP,

21 Feeney and Petrie for alleged trademark infringement regarding the "Rat Pack is

22 Back" mark registered to TRP.  Tratos declares that the meetings were only about

23 selecting a name, *i.e.* trademark issues.  The Hackett copyright and rights to exploit

24 the script written by Hackett, as well as to exploit the matters licensed to Hackett by

25 Joey Bishop – about which Tratos counseled Hackett in 2002 – are implicated

26 directly in this present action.  That license from Joey Bishop is personal to Hackett,

27 and Hackett obviously had the reasonable expectation that he was being counseled

28 personally and individually in 2002 with respect to such matters.

1 **B.**   **The Barton Music Cases**

2      The Barton Music Cases involved claims by music licensing companies that

3 TRP, Hackett and Feeney were unlawfully using the licensing companies'

4 copyrighted songs in the stage production of the TRP "Rat Pack Is Back" show.

5 TRP contended that use of the songs was covered in the venue hotels' BMI music

6 license. A significant dispute in the case was the nature of the TRP show

7 performance.  The fact that Hackett had registered his script back in 2005 in his

8 name was a significant aspect of that case.

9      Feeney reluctantly gave poignant testimony in this case, establishing the fact

10 that Hackett's 2005 script registration (which is at issue in this litigation) was an

11 important aspect of the Barton Music Cases:

12     **Q.    Well, did the existence of Sandy Hackett's registered**

13          **copyright ever turn from a potential problem to an actual problem**

14          **in the [Barton] litigation?**

15     **A:    It depends on how you--what you would call a problem.  If it**

16          **gave them a gigantic club with which to negotiate and bring us**

17          **down to our knees on a settlement, it became a huge problem.**

18 TRP PMK Depo., Vol. II, March 3, 2010, p. 221:13-19.  **Exhibit "28"**[7]

19      The relevant authority provides that where there is a substantial relationship

20 between the representation of the former client and the later action in which the

21 lawyer is adverse to his former client, the client need not disclose the confidential

22 information that was disclosed in order to disqualify the attorney.   Nevertheless,

23 _____

[7]   Feeney admitted that he has known since July 2005 that Sandy Hackett filed a copyright registration on June 7, 2005 for his script that is at the heart of this lawsuit. **Exhibit "28"** at p. 237:19-239:20.  Next, he admitted that in the Barton Music Cases, where GT represented Hackett, Feeney and TRP as counsel of record, the existence of the copyright registration was an issue in the case. He tried to tap-dance around its significance, initially labeling it a "potential problem." *Id* at 229:2-20.  When asked the question quoted here, he gave up the damning answer.

1   Hackett submits a declaration regarding the nature of these matters, in recognition of

2   this court's willingness to entertain a fact-intensive analysis as it did in the *In-N-Out*

3   *Burger* case cited by Defendants. *In-N-Out Burger v. Tire & Auto, Inc.* 2008 WL

4   2937294 (CD. Nev.)[8]   Hackett does so, noting that he is not waiving the

5   confidentiality of such matters.

6          Defendants' citation to Wisconsin law is unavailing for the notion that the

7   subsequent formation of the TRP limited liability company could somehow relate

8   back to deny the existence of a reasonable belief by Hackett that his individual

9   interests were being counseled. *Jesse by Reinecke v. Danforth*, 169 Wis. 2d 229

10  (Wis. 1992).  Among other reasons, as Tratos admits, he did not form the LLC of

11  TRP.  Tratos gave legal advice about intellectual property issues.  Another case

12  cited by Defendants, *Manion v. Nagin*, 394 F. 3rd 1062 (8th Cir. 2005), as Defendants

13  grudgingly acknowledge, recognizes (under Wisconsin law) that even though an

14  attorney (under Wisconsin law) may counsel a corporation regarding its

15  incorporation, an individual shareholder officer might, depending upon the facts,

16  reasonably expect that his individual interests are being represented as well.  The

17

18  [8]     Hackett notes that in that case, the court – and evidently the adverse parties –
19  were afforded access to the billing entries of the out of state attorneys for In-N-Out
    Burger who had retained Watson Rounds as local counsel in the prior matter, as well
20  as the Watson Rounds billings in the prior matter.  In the case now before the Court,
    GT (and Tratos) have neither produced nor identified on a privilege log any such
21  time records in either the 2002 Counseling or the Barton Music Cases.  That is one
    reason Plaintiff has sought such records all these months.  The privilege log
22  belatedly served by Defendants in this action on May 14, 2010 (three months after
    Defendants filed their Reply on their Motion to Quash), regarding GT documents in
23  the Barton Music Cases is notably incomplete.  A privilege log produced by Watson
24  Rounds in the Barton Music Cases reflects interaction with GT starting in June,
    2007.  The Hackett Decl. attaches copies of e-mails reflecting GT involvement in
25  May, 2007.  The earliest withheld document of GT noted on its May 14, 2010
26  privilege log is dated October 11, 2007 – omitting these earlier documents known to
27  exist.

28

1 | objective, reasonable expectations of the ostensible individual client will prevail.

2 |      A California case cuts against Defendants' position. *Woods v. Superior*

3 | *Court*, 149 Cal. App. 3d 931, 197 Cal. Rptr. 185 (1983) held that in a marital

4 | dissolution action, in which the wife had moved to join as a party the closely held

5 | corporation owned by the marital community estate (*i.e.*, 50/50 ownership),  the

6 | lawyer who had for years represented the corporation  could not represent the

7 | husband. "We conclude that, absent consent or waiver, the attorney of a family-

8 | owned business, corporate or otherwise, should not represent one owner against the

9 | other in a dissolution action." 149 Cal. App. 3d at p. 937, 197 Cal. Rptr. 185. The

10 | instant action by Plaintiff Hackett includes a cause of action for dissolution of the

11 | TRP LLC, rendering *Woods* applicable to both as to the substantial relation issue,

12 | and on the "dissolution" aspect.

13 |      The Barton Music Cases were two more or less mirror image cases.  TRP

14 | sued first.  Then Barton Music sued TRP, Hackett and Feeney over copyright claims

15 | arising from the production of "The Rat Pack is Back" show.  Tratos and GT were

16 | the lawyers of record for Hackett from the outset of this litigation.  The assertion, in

17 | Tratos' declaration, that his firm only became involved late in the game is amply

18 | controverted by review of the dockets alone.  See also King Decl. in support of

19 | Motion to Disqualify.  Similarly, Tratos' statement that GT got involved only late in

20 | the game to prepare a summary judgment motion is untrue.  No such motion was

21 | ever filed, and no privilege log reflects the preparation of any such motion.

22 | ### III.

23 | ### DEFENDANT'S REQUEST FOR

24 | ### SANCTIONS IS UNSUPPORTED

25 |      Defendants make fleeting reference to being entitled to sanctions in bringing

26 | their Motion to Compel.  That request must be denied.  Most importantly, Hackett's

27 | position is taken in the utmost of good faith, given that the conflict of GT is palpable

28 | and Defendants have persistently withheld Hackett's own files.  On more technical

1  grounds, the Notice of the Motion does not request sanctions, requiring denial of
2  such a passing, unsupported request for sanctions in the Memorandum of Points &
3  Authorities.  Further, no declaration is offered in the moving papers regarding what
4  fees or expenses allegedly were incurred.  Any belated declaration in a Reply would
5  not be proper, as it would deny Plaintiff the required due process opportunity to
6  respond.

## IV.

## CONCLUSION

9  As set out here, and more fully in the Motion to Disqualify being filed by
10 Plaintiff including supporting declarations, Hackett's deposition should not be taken
11 by GT, who formerly represented him in prior matters substantially related to the
12 present dispute.

14 DATED: May 24, 2010            KING, HOLMES, PATERNO & BERLINER, LLP

16 By: _____
                                      HOWARD E. KING
17                                    Attorneys for Plaintiff/Counter-Defendant SANDY
                                      HACKETT

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

     I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1900

4

Avenue of the Stars, 25th Floor, Los Angeles, California 90067-4506.

5

     On May 24, 2010, I served the following document(s) described as **OPPOSITION TO DEFENDANTS/ COUNTERCLAIMANTS' MOTION TO**

6

**COMPEL THE DEPOSITION OF PLAINTIFF SANDY HACKETT** on all interested parties in this action by placing true copies thereof addressed as follows:

7

**See Attached Service List**

8

☐    BY MAIL, enclosed in sealed envelope(s):  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that

9

practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of

10

business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of

11

deposit for mailing in affidavit.

12

☐    BY FEDERAL EXPRESS DELIVERY, enclosed in sealed envelope(s):  I am "readily familiar" with the firm's practice of collection and processing items for

13

Federal Express delivery.  Under that practice it would be deposited at Los Angeles, California, in an envelope or package designated by Federal Express in a facility

14

regularly maintained by Federal Express or delivered to a courier or driver authorized to receive documents on its behalf with delivery fees paid or provided

15

for.

16

☐    BY PERSONAL SERVICE, enclosed in sealed envelope(s):  I delivered such envelope(s) by hand to the office of the addressee(s).

17

☐    BY FACSIMILE:  I caused the foregoing document(s) to be served by facsimile transmission from sending facsimile machine number (310) 282-8903. to

18

each interested party at the facsimile machine telephone number shown.  Each transmission was reported as complete and without error.  A transmission report was

19

properly issued by the sending facsimile machine for each interested party served.

20

☒    BY ELECTRONIC MAIL (.PDF FORMAT):  I caused a true copy of the afore-named document[s] to be sent via e-mail (pdf format) to the interested

21

party/ies at the e-mail address/es indicated below.

22

     Executed on May 24, 2010, at Los Angeles, California.

23

☐    (State)    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

24

☒    (Federal)    I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

25

26

27

*Joey S. Gossett-Evans*

JOEY S. GOSSETT-EVANS

28

3616.060/349725.1

## SERVICE LIST

| | |
|---|---|
| Mark Borghese, Esq.<br>Ryan R. Gile, Esq.<br>Weide & Miller, Ltd.<br>7251 West Lake Mead Blvd., Suite 530<br>5th Floor, Bank of Nevada Building<br>Las Vegas, Nevada 89128<br>Tel:   (702) 382-4804<br>Fax:   (702) 382-4805<br>E-Mail: mborghese@weidemiller.com<br>E-Mail: rgile@weidemiller.com | *Co-Counsel for Plaintiff/Counter-*<br>*Defendant SANDY HACKETT* |
| Mark G. Tratos, Esq.<br>F. Christopher Austin, Esq.<br>Peter H. Ajemian, Esq.<br>Greenberg Traurig, LLP<br>3773 Howard Hughes Parkway<br>Suite 400 North<br>Las Vegas, Nevada 89169<br>Tel:   (702) 792-3773<br>Fax:   (702) 792-9002<br>Email: tratosm@gtlaw.com<br>Email: austinc@gtlaw.com<br>Email: ajemianp@gtlaw.com | *Attorneys for Defendants/Counter-*<br>*claimants RICHARD FEENEY, ARTHUR*<br>*PETRIE and TRP ENTERTAINMENT,*<br>*LLC and Defendants PLAYLV GAMING*<br>*OPERATIONS, LLC d/b/a PLAZA*<br>*HOTEL AND CASINO and BROADWAY*<br>*BOOKING OFFICE NYC, LTD.* |

KING, HOLMES,
PATERNO
& BERLINER LLP

3616.060/349725.1