Mark G. Tratos (Nevada Bar No. 1086)
F. Christopher Austin (Nevada Bar No. 6559)
Peter H. Ajemian (Nevada Bar No. 9491)
GREENBERG TAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

Counsel for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SANDY HACKETT, an individual<br><br>Plaintiff,<br><br>vs.<br><br>RICHARD FEENEY, an individual; ARTHUR PETRIE, an individual; TRP ENTERTAINMENT, LLC, a Nevada limited liability company, PLAYLV GAMING OPERATION, LLC d/b/a PLAZA HOTEL AND CASINO, a Nevada limited liability corporation; BROADWAY BOOKING OFFICE NYC, LTD, a New York corporation,<br><br>Defendants.<br><br>RICHARD FEENEY, an individual; ARTHUR PETRIE, an individual; TRP ENTERTAINMENT, LLC, a Nevada limited liability company, PLAYLV GAMING OPERATION, LLC d/b/a PLAZA HOTEL AND CASINO, a Nevada limited liability corporation; BROADWAY BOOKING OFFICE NYC, LTD, a New York corporation,<br><br>Counterclaimants,<br><br>vs.<br><br>SANDY HACKETT, an individual<br><br>Counter-Defendant. | Case No. 2:09-cv-02075-RLH-LRL<br><br>**DEFENDANTS/COUNTERCLAIMANTS' REPLY IN SUPPORT OF MOTION TO COMPEL THE DEPOSITION OF PLAINTIFF SANDY HACKETT** |

1.

Defendants RICHARD FEENEY ("Feeney"), an individual; ARTHUR PETRIE ("Petrie"), an individual; TRP ENTERTAINMENT, LLC ("TRP"), a Nevada limited liability company, PLAYLV GAMING OPERATION, LLC d/b/a PLAZA HOTEL AND CASINO (the "Plaza"), a Nevada limited liability corporation; and BROADWAY BOOKING OFFICE NYC, LTD ("BBO"), a New York corporation (collectively "Defendants") by and through counsel, GREENBERG TRAURIG LLP, hereby submit this reply in support of their Motion to Compel the Deposition of Plaintiff Sandy Hackett.

This Reply in support of the Motion is made in accordance with Federal Rules of Civil Procedure 26 and 45, and is supported by the following Memorandum of Points and Authorities together with the exhibits thereto, the papers and pleadings on file in this action, and any oral argument that this Court may allow.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

The Court should grant Defendants' Motion to Compel the Deposition of Plaintiff Sandy Hackett (hereinafter "Plaintiff" or "Hackett") because Plaintiff has refused to allow Defendants' counsel to take his deposition. Despite Defendants having produced over forty thousand (40,000) responsive documents to Plaintiff's numerous discovery requests, and having appeared for three separate depositions over multiple days,[1] Plaintiff now claims that Defendants' counsel should be disqualified from the case due to Defense counsel's prior representations of TRP in unrelated matters while Plaintiff was still a member of TRP. As such, Plaintiff will not allow his deposition to be taken by Defendants' counsel. However, this cry for disqualification comes nearly nine months after Plaintiff first alleged the conflict,[2] and it was only days before Plaintiff's scheduled deposition when he took the

---

[1] Defendant Feeney was deposed as PMK of TRP on two separate occasion. Defendant BBO was noticed for deposition, but was prevented from attending due to the volcanic eruption in Iceland that shut down air travel between Europe and the U.S.A.

[2] See Correspondence between Tratos and King attached to the Tratos Decl.

stance that Defense counsel should not be allowed to participate in discovery.[3]  Due to Plaintiff's lengthy delay in moving to disqualify Defendants' counsel, and the severe prejudice such a disqualification will cause Defendants, Plaintiff has waived his right to disqualify.

Notwithstanding Plaintiff's waiver of his right to disqualify Defendants' counsel, the instant Motion to Compel should be granted because disqualification of Defense counsel here is improper.  First, in their representation of TRP, Defense counsel did not represent Hackett in his individual capacity.  Second, even if Defense counsel's representation of TRP could somehow be construed as representing Hackett individually, the prior matters are not substantially related to the issues in the present case.  Finally, no confidential information was ever received by Defense counsel from Hackett such that Hackett can claim no prejudice arising from Defense Counsel's representation of TRP in the present matter.

At its core, this case involves a dispute over the copyright in the script of a live musical stage show called "The Rat Pack Is Back" (the "Show"), between the current and former members of the production company for the Show, TRP.  Additionally, certain contractual claims, among others, have been alleged by Plaintiff which are based upon the voluntary sale of his entire interest in TRP to the two remaining members, Feeney and Petrie.  The facts and procedure of this case have been set forth by Defendants in the pleadings (as well as in the Motion to Compel, upon which this Reply relies) and Defendants will spare the Court the repetition of same here.  However, Defendants reassert that this claim has been precipitated by the fact that Plaintiff made a legitimate, arms-length business deal with Defendants Feeney and Petrie, which was mutually agreed upon by all, and now, based upon questionable motives, Plaintiff is attempting to rescind that deal for his own benefit and to the detriment of his former business partners.

/ / /

/ / /

---

[3] See Austin Decl., ¶ 3.

Greenberg Traurig, LLP
Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

## II. DISCUSSION

Under the Federal Rules of Civil Procedure, parties in civil litigation have the right to request and obtain documents and deposition testimony. FED. R. CIV. P. 30(a)(1) specifically provides that a "party may, by oral questions, depose any person, including a party, without leave of Court." Pursuant to FED. R. CIV. P. 37(a), parties may file motions to compel if the other party fails to comply with the requirements set forth in the Federal Rules of Civil Procedure, including for failure to attend a deposition.

Here, Plaintiff refuses to be deposed by Defendants' counsel based on Plaintiff's contention that Defense counsel should be disqualified. However, disqualification in this matter is improper; therefore, the Court should grant Defendants' instant Motion to Compel.

### A. Disqualification of Defendants' Counsel is Improper

In Nevada, "[a]ttorney disqualification is an extreme remedy that will not be imposed lightly." Millen v. Eighth Judicial District Court, 148 P.3d 694, 701 (2006) (denying disqualification) (citations omitted). This is because "disqualifying an attorney causes delay, increases costs, and deprives parties of the counsel of their choice." Id. "Courts should, therefore, disqualify counsel with considerable reluctance and only when no other practical alternative exists." Id. The law is clear in the Ninth Circuit that federal courts apply state law in determining whether or not attorney disqualification is warranted. In re County of Los Angeles, 223 F.3d 990, 995 (9th Cir. 2000) (denying disqualification and holding that "[b]ecause we apply state law in determining matters of disqualification, we must follow the reasoned view of the state supreme court when it has spoken on the issue").

#### 1. Plaintiff Has Waived His Right to Disqualify.

The Ninth Circuit has held that "[w]here a party fails to make a motion to disqualify opposing counsel in a timely manner, the court may deem that party to have waived that right." Wild Game NG, LLC v. Wong's Intern. (USA) Corp., 2006 WL 3434379, 4 -5 (D. Nev. 2006), citing Trust Corp. of Montana v. Piper Aircraft Corp., 701 F.2d 85, 87-88 (9th Cir. 1983). The Nevada Supreme Court also recognizes that a party may be deemed to

LV 419,108,799v1 6-2-10

have waived the right to disqualify opposing counsel by not moving in a timely manner after learning of the conflict. See Nevada Yellow Cab Corp. v. Eighth Judicial Dist. Court ex rel. County of Clark, 123 Nev. 44, 49-50, 152 P.3d 737, 740 - 741 (Nev. 2007). Further, the Nevada Supreme Court considers the prejudices the parties will suffer in determining whether disqualification is warranted. Nevada Yellow Cab Corp., 123 Nev. at 53, 152 P.3d at 742-743.

Here, Plaintiff has waived his right to disqualify Defendants' counsel by strategically delaying filing the motion until many months after becoming aware of the conflict. Tellingly, Plaintiff had no objections to Defense counsel answering Plaintiff's complaint on behalf of Defendants, participating in motion practice and fully engaging in discovery since his complaint was filed on October 28, 2009.[4] While throughout this proceeding Plaintiff occasionally hinted at his intention to move to disqualify Defendants' counsel, Plaintiff had not done so until Defendants' counsel had engaged in significant and pervasive representation of Defendant is all aspects of a highly contentious litigation.[5] Contrary to Plaintiff's contention, even without obtaining a single document from Defendants, Plaintiff had adequate knowledge of the underlying disqualification issues well before filing his complaint. In fact, in the October 1, 2009 letter from Plaintiff's counsel Howard King ("King") to Defendants' counsel Mark Tratos ("Tratos"), King specifically lists actions taken by Tratos that he believes warrant Defense counsel's disqualification, and states "[t]here can be no serious dispute of these demonstrable facts."[6] Additionally, King asserts that Tratos "may very well end up being a significant witness to material issues in the dispute,"

---

[4] As set forth in this Motion, with the assistance of counsel, Defendants have produced over 40,000 responsive documents to Plaintiff's discovery requests, have participated in three key depositions, and have served numerous subpoenas on Plaintiff and other third party witnesses. All this in addition to the numerous pleadings and motions served and answered in this case has added up to a significant amount of time spent by Defendants' counsel on this case. To date, Defendants have received only a handful of documents from Plaintiff, and Plaintiff has refused to be deposed.

[5] In fact, Plaintiff has just recently filed his Motion to Disqualify with this Court under seal on May 25, 2010, weeks after Defendants filed the instant Motion to Compel raising the disqualification issues asserted by Plaintiff.

[6] See October 1, 2009 Letter from King to Tratos attached to the Tratos Decl.

and again demands Defense counsel's withdrawal from the representation.[7] Further, as clearly evidenced by the correspondence between the parties attached to the Tratos Declaration, Plaintiff had adequate knowledge of the alleged conflict before ever filing his complaint.[8] While Defendants' counsel repeatedly assured Plaintiff's counsel that there was no conflict, Plaintiff's counsel continued to harangue Defendants' counsel regarding the issue. In a letter from King to Tratos dated December 1, 2009, King continues to request access to the confidential client files of TRP, stating, "[w]hat will it take you to compel you to produce such materials forthwith?"[9] Tratos' reply is dated December 4, 2009, and states Defense counsel's position in no uncertain terms -- the materials requested by Plaintiff are protected by the attorney/client privilege.[10]

Therefore, Plaintiff could have, and should have, moved to disqualify Defendants' counsel as soon as Defendants answered the complaint if he really believed that his client would be prejudiced by such representation. There was no need to wait for Defendants or Defendants' counsel to produce a single document before moving if Plaintiff had real grounds to assert any harm from such representation. Instead, Plaintiff chose to strategically wait until he had received the discovery he wanted from Defendants, using the disqualification issue as a "shield" to deny producing virtually any discovery responsive to Defendants' request, and then file the disqualification motion at a time that is most prejudicial to Defendants.

Plaintiff's counsel claims that by raising the issue in letter and telephone correspondence with Defendants' counsel they have somehow preserved Plaintiff's right to disqualify. This claim is unfounded - a party cannot avoid a waiver of his right to disqualify by merely complaining and writing letters. The only way to toll a waiver of a motion is to bring the motion. This Plaintiff failed to do. Rather, Plaintiff now seeks to disqualify

---

[7] Id.
[8] See Correspondence between Tratos and King attached to the Tratos Decl.
[9] See December 1, 2009 Letter from King to Tratos attached to the Tratos Decl.
[10] See December 4, 2009 Letter from Tratos to King attached to the Tratos Decl.

LV 419,108,799v1 6-2-10

Defendants' counsel in order to prejudice Defendants, not as a result of any actual harm to Plaintiff. Accordingly, he has waived his right to seek disqualification.

### 2. The Disqualification Standard is Not Satisfied in this Case.

Even if this Court does not find waiver, Plaintiff should still be compelled to appear for his deposition because he cannot meet the attorney disqualification standards set forth by the Nevada Supreme Court. See Nevada Yellow Cab Corp. v. Eighth Jud. Dist. Ct., 152 P.3d 737, 741 (Nev. 2007); Waid v. Eighth Jud. Dist. Ct., 119 P.3d 1219, 1223 (Nev. 2005). Here, there is no attorney client relationship, the matters are disparate and there is no confidential communication provided to Defendants' counsel by which Plaintiff could be harmed.

#### i. No Attorney-Client Relationship.

The rule in Nevada is that "a lawyer representing a corporate entity represents only the entity, not its officers, directors, or shareholders, and not any related entities such as parents, subsidiaries or sister companies." Waid, 119 P.3d at 1223; see also, Burnett, 2007 WL 2767936, at *5 (the rule is that an attorney can represent a corporation in a dispute against a former officer from whom he received confidential information). Numerous courts from various jurisdictions have adopted this rule. See Fisher v. Grove Farm Company, Inc., 2009 WL 5117005, at *32 (Hawai'i App.) (a corporation's attorney generally has no duty to minority shareholders of the corporation); Bobbitt v. Victorian House, Inc., 545 F. Supp. 1124, 1126 (N.D. Ill. 1982) (representing a small, close corporation "does not inherently mean also acting as counsel to the individual directors-shareholders"); Brennan v. Ruffner, 640 So.2d 143, 145-46 (Fla. Dist. Ct. App. 1994) (holding that an attorney did not represent individual shareholders when he drafted the shareholders' agreement); Palmer v. Fox Software, Inc., 107 F.3d 415, 420-21 (6th Cir. 1997) (holding that minority shareholder had no direct cause of action against corporate attorney for malpractice where insufficient evidence existed to demonstrate that personal reliance on the advice of attorney was reasonable); Felty v. Hartweg, 523 N.E. 2d 555, 557 (Ill. App. Ct. 1988) (holding that corporation's attorney did not have fiduciary duty to a

7.

1 minority shareholder where there was no express agreement that the minority shareholder
2 was to be a beneficiary of the contract between the attorney and corporation); Goerlich v.
3 Courtney Indus., Inc._, 581 A.2d 825, 827-28 (Md. Ct. Spec. App. 1990) (holding that an
4 attorney who drafted a shareholders' agreement may not be liable to one of those
5 shareholders for negligent representation); Multilist Serv. of Cape Girardeau, Mo., Inc. v.
6 Wilson, 14 S.W.3d 110, 114 (Mo. Ct. App. 2000) (holding that individual members of a
7 corporation do not have an attorney-client relationship with the corporation's attorney).

8 Additionally, in Fisher, the Intermediate Court of Appeals of Hawai'i analyzed its own
9 Rule of Professional Conduct 1.13 (Organization as Client), which is strikingly similar to
10 Nevada Rule of Professional Conduct 1.13, and held that the language of this rule provides
11 that an attorney for a closely held corporation generally owes no duty to individual
12 shareholders. Fisher, 2009 WL 5117005, at *33. Additionally, the Hawai'i court interpreted
13 its Rule 1.13(e), again which contains language identical to Nevada's Rule 1.13(g), to mean
14 that a lawyer representing an organization does not also necessarily represent the
15 organization's shareholders. Id.

16 Plaintiff relies on the California case Woods v. Superior Court, 149 Cal. App. 3d 931
17 (Cal. Ct. App. 1983), for the proposition that a lawyer who represents a closely held
18 corporation cannot represent one of the owners as against another. That California case is
19 factually distinguishable from this matter. Woods dealt with an attorney's representation of
20 a closely held corporation, owned by a husband and wife, while they were in the process of
21 a divorce proceeding. Id. at 935-36. Simultaneously, the attorney in Woods took on
22 representation of the husband as against the wife in the divorce proceeding where the
23 company was to be dissolved as a marital asset. Id. The attorney did this after having
24 obtained confidential information relevant to the dissolution of the company (and therefore,
25 also of a martial asset) from the wife. Id. Of course the court found he was conflicted. Id.
26 at 936.

27 Here, Defense counsel did not represent TRP in a "divorce action" or even in the
28 buyout of Hackett's interests. The prior representations of TRP were not then and are not

LV 419,108,799v1 6-2-10

now adverse to Hackett's interests, nor related to the subject matter of the present action.[11] Hackett not only never conveyed any confidential information that could prejudice him in the instant matter, there was no reasonable probability that any confidences would ever have been disclosed at all.[12]  In the 2002 Counseling, all advice given by Defense counsel to Feeney, Petrie and Hackett was for the benefit of the corporate entity TRP regardless of whether TRP was actually formed at the time or not.[13]   See, e.g., Jesse by Reinkecke v. Danforth, 169 Wis.2d 229, 241 (Wis. 1992) (where the "entity rule" applies retroactively to the seeking of legal advice in furtherance of the formation of a corporation.)   In the Barton Music Cases, while Hackett was individually named as a Defendant, along with Feeney and TRP, the interests of TRP, Feeney and Hackett were aligned at all times and as set forth in the Motion to Compel (and again below) and the case dealt with music rights, not the copyright of a script.[14]

          ii.       The Matters are Not Substantially Related.

Even if this Court determines that Hackett was somehow individually represented by Defense counsel in either of the prior matters, those matters are not substantially related to the issues in the case at hand.  The Supreme Court of Nevada has established a three-part test for determining whether a current and former matter are "substantially related" for the purpose of disqualifying counsel: (1) the court must make a factual determination regarding the scope of the former representation; (2) the court must evaluate whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters; and (3) the court must determine whether the alleged confidential information is relevant to the issues in the present litigation.  See Waid, 119 P.3d at 1223.  Here, the application of these factors to the 2002 Counseling and the Barton Music Cases show that the current matter is not substantially related to either.

---

[11] See Tratos Decl., ¶¶ 8-9.
[12] See Tratos Decl., ¶ 11-13.
[13] See Tratos Decl., ¶¶ 8-9.
[14] See Tratos Decl., ¶ 12.

LV 419,108,799v1 6-2-10

As set forth in Defendants' Motion to Compel, the 2002 Counseling involved legal advice given to the members of TRP in their corporate capacity (whether formed, or just about to be formed), and related specifically to how TRP could exploit the names of the famous performers Frank Sinatra, Sammy Davis, Jr., Joey Bishop, and Dean Martin as part of the title of their proposed tribute show to the original "Rat Pack" without running afoul of Nevada's Right of Publicity Act.[15] Plaintiff neither sought nor received legal advice in his individual capacity.[16] Moreover, the retainer agreement eventually signed was with TRP - not with Hackett, Feeney, or Petrie - and all payments for the legal work performed were by TRP, not the individuals.[17] Therefore, as the scope of the representation was to TRP and excluded Hackett in his individual capacity, it is not reasonable to infer that confidential information was actually given to Tratos in his representation of TRP.

Regarding the Barton Music Cases, Plaintiff relies on the convoluted argument that because he was named individually as a defendant (along with TRP and Feeney), and Defendants' counsel is listed in the pleadings as representing "Defendants" in the plural, that the scope of Defense counsel's representation of TRP included Hackett individually. It did not. Again, as TRP's interests were aligned with Hackett's in the Barton Music Cases, Defense counsel undertook representation of TRP, and any representation of Hackett was incidental to the representation of TRP.

Additionally, the underlying issues in the Barton Music Cases are significantly different from those in the instant case, therefore, it is not reasonable to infer Defense counsel received any confidential information from Hackett adverse to his interest in the present matter. In his Opposition, Plaintiff cites to a question and answer of Feeney from his PMK deposition, and claims this is a "damning answer" demonstrating that the underlying copyright of the script was at issue in the Barton Music Cases.[18] However, this

---

[15] See Tratos Decl., ¶ 9.

[16] See Tratos Decl., ¶¶ 8-9.

[17] See Tratos Decl., ¶ 11.

[18] See Plaintiff's Opposition to Defendants' Motion to Compel, p. 7.

quote from the deposition transcript referring to a problem in the Barton Music Cases caused by Hackett's underhanded registration of the copyright in the script is taken out of context. The problem that Feeney is referring to as a "gigantic club with which to negotiate and bring us down to our knees on a settlement" had nothing to do with the content of Hackett's illicitly copyrighted script; rather, it had to do with the way Hackett unilaterally listed the "Nature Of This Work" as a "Musical Play" on the copyright application, a matter not at issue at all in the present case.[19]

In other words, the underlying copyright issue in the Barton Music Cases was not with the copyright in the script itself; instead, it was with the use of three specific copyrighted songs in the Show in a way the Barton plaintiffs claimed qualified as a "dramatic work," entitling them to an additional royalty payment from TRP.[20] The fact that Hackett listed the script as a "Musical Play" on the copyright application gave the Barton plaintiffs additional ammunition in attempting to prove that TRP's use of the songs in the Show warranted a grand rights license which was not currently being paid by TRP (as TRP did not consider the use of the songs in the Show to be a dramatization of the lyrics). Turning a few pages in the deposition transcript cited by Plaintiff reveals the true meaning of Feeney's words:

> Q.   What threats were made by opposing counsel?
>
> A.   That they were going to take it to trial and prove that the show was actually a play and that we would have to go negotiate different rights in the songs that were used and they would seek certain -- different damages, and the potential downside was much higher than what we finally agreed to settle on.

TRP PMK Depo. Vol. II, March 19, 2010, p. 232 : 10-16.[21]

As such, the issues in the Barton Music Cases are not "substantially related" to those in the instant case. Not only is it unreasonable to infer that Hackett would ever have

---

[19] Id.; See also, Exhibit "A" to Plaintiff's Complaint filed October 28, 2009.

[20] See Tratos Decl., ¶ 11.

[21] See Exhibit 28 to Plaintiff's Motion to Disqualify, as cited by Plaintiff in his Opposition.

11.

given confidential information to Defense counsel in those matters, but it is improbable that any confidential matter that would have been conveyed would have had anything to do with the unrelated instant action. Thus, disqualification here is improper and the Court should grant Defendants' Motion to Compel.

### B. Plaintiff's Motion to Disqualify

In his Opposition to Defendants' Motion to Compel, Plaintiff references his later-filed Motion to Disqualify,[22] including the declarations of King and Hackett, which are not attached to Plaintiff's Opposition. For the convenience of the Court, Defendants will address the issues raised in Plaintiff's Motion to Disqualify, including the King and Hackett Declarations, in their Opposition to that Motion.

### C. Defendants Are Entitled to Their Attorneys' Fees and Costs

Contrary to Plaintiff's contention in his Opposition, pursuant to Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure, Defendants' are entitled to recovery of their attorneys' fees and costs for filing the Motion to Compel. Plaintiff has not refused to be deposed in good faith, but rather has done so as a means to stall the litigation and ramp up the costs. As set forth in Defendants' Motion to Compel and this Reply, Plaintiff had all the information he needed, and every opportunity to bring his Motion to Disqualify from the onset of this litigation and thereby avoid significant prejudice to Defendants. However, he chose to wait to bring it until just days before he was scheduled to be deposed by Defendants' counsel, and nearly nine months (or more) from the time he alleges the conflict.

Plaintiff's "technical" objections to Defendants' request for attorneys' fees and costs on the novel ground that failure to include such a request in the caption or to detail out costs in an affidavit before they are fully known warrants denial is without merit. Defendants properly requested their fees and costs for having to bring this motion in accordance with Rule 37, and Plaintiff offers no authority to the contra.

/ / /

---

[22] Plaintiff's Motion to Disqualify, and attached declarations and Exhibits, was filed under seal on May 25, 2010.

LV 419,108,799v1 6-2-10

## IV. CONCLUSION

For each of the reasons identified above, Defendants/Counterclaimants respectfully request that the instant Motion be granted, that this Court find no basis for the disqualification of Defendants' counsel, compel the deposition of Sandy Hackett within a reasonable timeframe, and award Defendants their reasonable expenses, including attorneys' fees incurred in making this Motion.

DATED this 4th day of June, 2010.

                                          Respectfully submitted,

                                          GREENBERG TRAURIG, LLP

                                          /s/ F. Christopher Austin
                                          Mark G. Tratos (Nevada Bar No. 1086)
                                          F. Christopher Austin (Nevada Bar No. 6559)
                                          Peter H. Ajemian (Nevada Bar. No. 9491)
                                          3773 Howard Hughes Pkwy, Suite 400N.
                                          Las Vegas, NV  89169
                                          Counsel for Defendants

LV 419,108,799v1 6-2-10

## CERTIFICATE OF SERVICE

I hereby certify that on <u>June 4, 2010</u>, I served the foregoing DEFENDANTS/COUNTERCLAIMANTS' REPLY IN SUPPORT OF MOTION TO COMPEL THE DEPOSITION OF PLAINTIFF SANDY HACKETT via the Court's CM/ECF filing system to all counsel of record and parties as listed.

                 __/s/_ F. Christopher Austin_____
                 An employee of GREENBERG TRAURIG, LLP

Greenberg Traurig, LLP
Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

LV 419,108,799v1 6-2-10

*LV 419,108,799v1 6-2-10*