1

2

3                       **UNITED STATES DISTRICT COURT**

4                            **DISTRICT OF NEVADA**

5                                    * * *

6    SANDY HACKETT,                          )
                                             )
7                         Plaintiff,         )
                                             )        2:09-cv-02075-RLH-LRL
8    v.                                      )
                                             )        **O R D E R**
9    RICHARD FEENEY, *et al.*,               )
                                             )
10                        Defendants.        )
                                             )
11   _____)

12           Before the court is plaintiff's Motion to (1) Disqualify Greenberg Traurig, LLP; (2) Disqualify

13   Mark Tratos as Trial Counsel; (3) for Surrender of Client Files of Sandy Hackett; and (4) for Leave to

14   Take Mark Tratos' Deposition (#54).[1]  The court has reviewed the motion, defendants' Opposition

15   (#67), defendants' documents submitted for *in camera* review, plaintiff's Reply (#76), and the exhibits

16   attached to the foregoing.  Also before the court is defendants' Motion to Compel Deposition of Sandy

17   Hackett (#50).  The court has reviewed the motion, plaintiff's Opposition (#53), and defendants Reply

18   (#57).

19                                   **BACKGROUND**

20           In this action for copyright infringement, the parties dispute the copyright in the script for a live

21   stage show entitled, "The Rat Pack is Back" ("the Show").   In 2002, plaintiff, Sandy Hackett

22   ("Hackett"), and defendants, Richard Feeney ("Feeney") and Arthur Petrie ("Petrie"), formed a limited

23   liability corporation, TRP Entertainment LLC ("TRP" or "the LLC"), to act as the production company

24   for the Show.  TRP was registered with the Nevada Secretary of State on April 25, 2002; the group's

25   _____

26           [1]  Plaintiff has since withdrawn the portion of the motion seeking to compel the deposition of Mark Tratos. *See*
     Withdrawal of Motion for Leave to Take Deposition of Mark Tratos (#64).

operating agreement was signed on May 12, 2002.  TRP has produced the Show in various venues in Las Vegas, Nevada, as well as a traveling production of the Show internationally and throughout the United States.

On June 7, 2005, Hackett filed a copyright application with the United States Copyright Office for a show entitled, "The Tribute to Frank, Sammy, Joey, and Dean," with an alternate title of "The Rat Pack returns in the tribute to Frank, Sammy, Joey & Dean," which was included on the electronic copyright record.  The application matured into United States Copyright Registration No. PA 1-284-402 ("the 2005 copyright"), and is the copyrighted script underlying the dispute in the instant case.

On September 2, 2006, Hackett, Feeney, and Petrie entered into an agreement whereby Feeney and Petrie would buy Hackett's interest in TRP for $40,000.[2]  Hackett remained involved in the production of the Show until 2009.  Tensions arose amongst Hackett, Feeney, and Petrie, and on September 9, 2009, Hackett was terminated from any further involvement with the Show.  The next day, September 10, 2009, Hackett notified the defendants in writing that he "'hereby terminates any license or consent he may have granted you to utilize his copyrighted materials or other creative materials in connection with the Production. Any further performance of the Production will be considered a willful infringement of Sandy's registered copyright and other rights.'"  Mot. (#54) at 7.  Hackett filed suit in this court on October 28, 2009.

On September 21, 2009, before the case was filed but after Hackett's counsel, Howard E. King ("King"), made defendants aware of the impending lawsuit, King sent an email to defendants' counsel, Mark Tratos ("Tratos") of the firm Greenberg Traurig LLC ("GT"), demanding that he and GT "refrain from further involvement in this matter and that [Tratos and GT] provide no services or advice to Sandy's adversaries in the TRP dispute."  Exh. 1 to Mot. (#54).  Tratos responded that day, stating, "I do not now, nor I believe I have not in the past five years, ever represented Sandy individually.  I

---

[2] The circumstances surrounding the purchase of Hackett's interest are hotly contested by the parties but are not germane to the issues of attorney disqualification and the return of client files which are the subject of the instant motion.

represented the LLC TRP of which Sandy was a member and thus there is no basis for your request that we not represent TRP in the future." *Id.* Tratos further asserted that even if he or another member of his firm had represented Hackett "personally in another unrelated matter that would have been many years ago and nothing we could have learned from him in such a matter would be relevant to the current dispute about copyrights Sandy filed in the past 4 years . . . and thus is not a basis for our preclusion from this dispute." *Id.*

On October 1, 2009, King sent a letter to Tratos, both taking issue with Tratos' statement that he had not represented Hackett "in the past five years," and further alleging that Tratos had "given advice to Sandy personally both within the last 5 years, and before that, in matters that are substantially related to the disputes now existing between Sandy, Messrs. Feeney and Petrie, and TRP Entertainment LLC." Exh. 2 to Mot. (#54). Tratos responded by letter dated November 19, 2009, in which he stated, "We have thoroughly reviewed your allegations of a conflict relative to our representation of Dick Feeney and his company and find the allegations to be baseless. . . . Moreover you have not provided a single supporting piece of evidence to substantiate your allegations of conflict." Exh. L to Opp'n (#67). The same day, King responded by letter but did not offer any supporting evidence. He stated, "You know full well the particulars of the conflict. Your bravado in not acknowledging the conflict will color your protestations letter." Exh. 3 to Mot. (#54). He then demanded "immediate access to the entire files in each of the matters in which you and your firms represented or advised Sandy Hackett, as well as copies of all bills from your firms reflecting the work done in those matters." *Id.* Tratos responded that his firm has no files for Hackett, only files for TRP. Exh. 5 to Mot. (#54).

The case proceeded, and both parties propounded and responded to discovery. Defendants submitted to depositions, at which defendants' counsel appeared without objection. On February 12, 2010, defendants filed a Motion to Quash Subpoenas Served on Defendants' Counsel (#32). The subpoenas sought files that Hackett alleged were germane to the issue of disqualification of defendants' counsel, *see* Opp'n (#34) at 6. The court granted the motion to quash on June 10, 2010. Order (#62).

On March 25, 2010, defendants issued a Notice of Deposition to Sandy Hackett, setting his

deposition for May 5, 2010.  Exh. M to Opp'n (#67).  On April 23, 2010, King informed defense counsel, Chris Austin ("Austin"), that Hackett was not available to appear that day.  Austin Decl., Exh. J to Opp'n (#67) at ¶ 3.  Austin and King spoke twice over the phone and disagreed on various issues.  *See* King Decl., Exh. A to Mot. (#54) at ¶ 27, 29.  Among other matters, they discussed King's position that GT should be disqualified from representing TRP.  *Id.* at ¶ 27; Austin Decl. at ¶ 3.  In a later conversation on April 23, 2010, King told Austin that "if he was going to push the issue of Hackett's deposition, that either he would have to file a motion to compel or that Hackett would have to file a motion to disqualify GT so that the issue could be determined before Hackett's deposition would proceed."  King Decl. at ¶ 31.

Thereafter a Motion to Compel Deposition of Sandy Hackett (#50) was filed by defendants on May 7, 2010, and the instant Motion to Disqualify (#54) was filed by Hackett on May 25, 2010.  The issue of disqualification is central to both motions, and the parties make overlapping if not identical arguments regarding disqualification in their motions (##50, 54), oppositions, and replies.  Through the instant motion (#54), Hackett seeks an order of the court (1) disqualifying GT from representation pursuant to Rules 1.9 and 1.10 of the Nevada Rules of Professional Conduct; (2) disqualifying Tratos as trial counsel because he will be called as a witness; and (3) ordering the surrender of alleged client files to Hackett.

**DISCUSSION**

**A. Plaintiff's Motion to Disqualify Greenberg Traurig**

Federal courts apply state law in determining whether attorney disqualification is warranted. *In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000) ("Because we apply state law in determining matters of disqualification, we must follow the reasoned view of the state supreme court when it has spoken on the issue.") (citations omitted).  The Supreme Court of Nevada has stated that "[c]ourts deciding attorney disqualification motions are faced with the delicate and sometimes difficult task of balancing competing interests: the individual right to be represented by counsel of one's choice, each party's right to be free from the risk of even inadvertent disclosure of confidential information, and

4

the public's interest in the scrupulous administration of justice." *Brown v. Eighth Judicial Dist. Court*, 116 Nev. 1200, 1205 (Nev. 2000) (citation omitted).   Close cases are resolved in favor of disqualification. *Palmer v. Pioneer Inn Assocs.*, 19 F. Supp. 2d 1157, 1162 (D. Nev. 1998) ("Where disqualification is contemplated, 'any doubt is resolved in favor of disqualification.'" (citing *Faison v. Thornton*, 863 F. Supp. 1204, 1216 (D. Nev. 1993))), *overruled on other grounds*, 338 F.3d 981 (9th Cir. 2003).

Nevertheless, "[p]articularly strict judicial scrutiny" should be given to a motion to disqualify opposing counsel because there is a significant possibility of abuse for tactical advantage.   *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (citing *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715,721-22 (7th Cir. 1982)) (other citation omitted). Tactical considerations often motivate such motions. *In re Marvel*, 251 B.R. 869, 871 (Bkrtcy. N.D. Cal. 2000) (citation omitted).  Courts must prevent parties from misusing motions for disqualification as "instruments of harassment or delay." *Brown*, 116 Nev. at 1205.  Courts therefore approach the issue of whether to disqualify opposing counsel as "a drastic measure which courts should hesitate to impose except when absolutely necessary." *United States v. Titan Pac. Const. Corp.*, 637 F. Supp. 1556, 1562 (W.D. Wash. 1986) (quoting *Freeman*, 689 F.2d at 721).

Under the Local Rules, attorneys practicing before this court are required to act in accordance with the Model Rules of Professional Conduct as adopted and amended by the Supreme Court of Nevada. LR IA 10-7(a).  Under those rules, the general authority regarding conflicts of interest is that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Supreme Court Rule 1.9(a) (replacing former Supreme Court Rule 159); *see also* Supreme Court Rule 1.10(b) (when a lawyer has terminated an association with a firm, the firm is prohibited thereafter from representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm, when the matter "is the

1  same or substantially related to that in which the formerly associated lawyer represented the client and

2  any lawyer remaining in the firm has confidential information that is material to the matter").

3      To prevail on a motion to disqualify, the party seeking disqualification must establish three

4  elements: (1) the moving party had an attorney-client relationship with the lawyer; (2) the former

5  representation of the client and the current matter are substantially related; and (3) the current

6  representation is adverse to the party seeking disqualification. *See Nevada Yellow Cab, Corp. v. Eighth

7  Judicial Dist. Ct.*, 152 P.3d 737, 741 (Nev. 2007).   To determine whether a former and a present matter

8  are "substantially related," Nevada employs the three part inquiry set forth in *Waid v. Eighth Judicial

9  District Court*, 119 P.3d 1219 (Nev. 2005).   *See In-N-Out Burger v. In & Out Tire & Auto, Inc.*, 2008

10  U.S. Dist. LEXIS 63883 at *10 (D. Nev. July 24, 2008).   Under *Waid*  the court must (1) make a factual

11  determination concerning the scope of the former representation, (2) evaluate whether it is reasonable

12  to infer that the confidential information allegedly given would have been given to a lawyer representing

13  a client in those matters, and (3) determine whether that information is relevant to the issues raised in

14  the present litigation. *Id.* at 1223 (adopting Seventh Circuit's test).   The burden of proving whether two

15  matters are substantially related falls on the party moving for disqualification. *Robbins v. Gillock*, 862

16  P.2d 1195, 1197 (Nev. 1993).   "Mere similarity or a superficial resemblance between prior and present

17  representation is insufficient to justify disqualification." *Robbins*, 862 P.2d at 1197.

18      Hackett focuses on two alleged scenarios of prior representation to establish a conflict

19  warranting disqualification: (1) counseling from Tratos in 2002 regarding the Show ("2002

20  counseling"); and (2) a pair of consolidated cases dealing with alleged copyright infringement in 2007

21  (" Barton/Maryville Cases").[3]   It is undisputed that Tratos, and GT by imputation,  acted as counsel to

22  TRP in both instances. The parties disagree, however, on whether Tratos represented only the LLC or

23  the LLC and Hackett personally.  Hackett maintains that "in any work done by Tratos or GT for TRP,

24

25      [3]  Although in his motion (#54) Hackett also writes about a matter involving BC Entertainment/Harrah's Casino
and another matter involving DRDC Productions, he expressly states that the 2002 counseling and the Barton/Maryville
26  cases form the basis of the disqualification motion. Mot. (#54) at 3, 8.  Accordingly, the court's opinion is limited to the
evidence and argument propounded as to those two matters.

1    GT was also representing [Hackett's] individual interest as a member of a small closely held entity as

2    well." Mot. (#54) at 3.  He goes on to say that "because the conflicts arising from (a) the pre-LLC

3    formation 2002 counseling of Hackett by Tratos ("2002 counseling"), and (b) the Barton Music Cases

4    representation by Tratos and GT are not complicated with the issue of whether representing an LLC is

5    *per se* representation of the members, for purposes of this Motion, Hackett focuses on those two

6    scenarios." *Id.*  Defendants maintain that Hackett cannot meet even the threshold showing that he and

7    Tratos entered into a personal attorney-client relationship, much less that the alleged prior representation

8    is substantially related to current action under Nevada law.  Moreover, defendants argue, Hackett has

9    waived the motion to disqualify because he has waited too long.

10           ***The 2002 Counseling***

11           Hackett contends that he and Tratos entered into a personal attorney-client relationship as the

12   result of legal counseling he received from Tratos in 2002.  The parties disagree as to both the timing

13   and the quantity of counseling which occurred in 2002.   Both agree that the primary purpose of the

14   counseling was to avoid potential legal disputes regarding the name of the show.  Hackett represents

15   that he and the other TRP members met with Tratos several times in 2002, prior to the formation of the

16   LLC, tending to show that the individual members of the LLC, and not the LLC itself, were the clients

17   of Tratos.  Hackett additionally asserts that he received individual counseling from Tratos "[i]n

18   connection with the assuring that the production would not run afoul of any asserted rights of [another

19   Rat Pack based production produced by DRDC Productions]" regarding obtaining a written

20   authorization or confirmation from Joey Bishop to exploit him and his character.  *Id.* at ¶ 13.  Tratos

21   allegedly "said that such authorization or confirmation would be useful in perfecting the rights to

22   produce a Rat Pack-oriented show."  A copy of such a  license between Hackett and Joey Bishop, dated

23   March 1, 2002, is attached to the motion as Exhibit 23.  Defendants maintain that a single counseling

24   session occurred between Tratos and TRP after the formation of the LLC, thus bolstering their assertion

25   that Tratos represented only the LLC.  *See* Feeney Aff. at ¶ 5 ; Petrie Aff. at ¶ 2; Tratos Aff. at ¶ 4.

26           In Nevada, a lawyer employed or retained by an organization represents the organization.  Rule

1.13(a).  Generally, confidential communications between a lawyer for an organization and an agent of the organization about a matter of interest to the organization does not make the lawyer counsel for the associated person with respect to that person's own interests in the same matter. RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS §14, cmt. f (2000).   An implied individual attorney-client relationship with a member of the organization may be found where a lawyer performs personal legal services for the organization as well as an individual, or where the organization is small and characterized by extensive common ownership and management.  *Id.* at §14(f). A lawyer does not, however, enter into a client-lawyer relationship with a person associated with an organizational client solely because the person communicates with the lawyer on matters relevant to the organization that are also relevant to the personal situation of the person.  *Id.*  The question is one of fact based on the reasonable and apparent expectations of the person or entity whose status as client is in question.  *Id.*

The evidence before the court does not support a finding that Hackett was an individual client of Tratos.  Hackett's account of multiple meetings, including individual counseling to him, is not supported by the record.  For example, Hackett provides no dates for the meetings, nor does he even individually describe what events allegedly occurred at one meeting or another.  Hackett describes members of Tratos' firm "doing research, I  believe on the internet, regarding what other Rat Pack-oriented productions existed or had been performed.  I understood that such research was directed toward determining the names that our production could use, without infringing upon such other shows, such as that of Cassidy and Rio and [DRDC Productions]."  Hackett Aff. at ¶ 8.  Without more it is difficult  to accept that these events occurred repeatedly for three to four meetings.

Further, the court has reviewed the billing records of GT, which were submitted for *in camera* review.  The billing records do not reflect multiple meetings between any member of TRP and Tratos either before or after April 25, 2002; nor is there any record of Hackett having been billed individually for services.  The earliest billing entry related to Feeney and TRP is May 2, 2002, which corroborates defendants' assertion that a single meeting occurred with Tratos after formation of the LLC. The notes accompanying the billing indicate that the meeting was related to naming the show, which is consistent

with both Hackett's and the defendants' description of what occurred while meeting with Tratos. Finally, Hackett's assertion that the Joey Bishop license, dated March 1, 2002, supports a finding that several meetings occurred prior to formation of the LLC is not persuasive; particularly in light of the lack of corroborating evidence or description to support such a finding. The court thus credits defendants' representation that the only meeting with Tratos occurred on May 2, 2002.

With regard to the scope of the meeting, Hackett acknowledges that Tratos met him with the other members of TRP and not individually. Hackett Aff., Exh. B to Mot. (#54) at ¶ 2. The purpose of the counseling was to avoid potential legal disputes between TRP's "Rat Pack" production and another show, "The Rat Pack is Back," which was produced by DRDC Productions. *Id*. at ¶ 6; Feeney Aff. at ¶ 5, 13; Petrie Aff. at ¶ 2.    Even as to the Joey Bishop license, Hackett does not assert that Tratos spoke with him as to how the license would affect Hackett's legal interests personally, but only that Tratos suggested such an authorization would help in perfecting the rights to produce *the Show*. *Id.* at ¶ 13. It is not disputed that TRP, and not Hackett, Feeney, and Petrie as individuals, produced the Show. Other than to conclusorily state, "I understood that Tratos and his firm were counseling me individually," Hackett Aff. at. ¶ 9, Hackett has not explained why it was reasonable to conclude that such counseling, all directed to the LLC members after the formation of the LLC, and directly focused on legal issues surrounding the name of the Show, was individual counseling such that he and Tratos had developed an personal  attorney-client relationship.[4]

But even were the court to accept Hackett's representation that Tratos counseled him individually in 2002, he fails to make even a prima facie showing that such counseling was substantially related to the instant matter under *Waid*. Hackett relies instead on a California state case, *Woods v. Superior Court*, 149 Cal. App. 3d. 931 (Cal. Ct. App. 1983), for the proposition that a lawyer who

---

[4]  In his Reply (#76), Hackett points to Rule 1.13(f) which provides that in representing an organization, a lawyer has an affirmative duty to "take reasonable steps to ensure that the constituent realized that the lawyer's client is the organization rather than the constituent," and notes that defendants have not put forth evidence that Tratos took such steps. Reply (#76) at 7. The court notes, however, that this is a 2007 addendum to the rule and was thus not in force at the time of the 2002 counseling.

1   represents a closely held corporation cannot represent one of the owners as against another.  That case

2   involved the somewhat convoluted situation of an attorney who represented a closely held corporation,

3   owned by a husband and wife, who then took on representation of the husband in the couple's divorce

4   proceeding where the company was to be dissolved as a marital asset. *Woods*, 149 Cal. App. 3d. at 935-

5   36.  The facts of that case bear no relationship to the facts here.

6        Hackett also cites *Responsible Citizens v. Superior Court*, 16 Cal. App. 4th 1717 (1993) for the

7   proposition that where a firm represents an individual partner's interest as well as the partnership, the

8   issue of representation for disqualification purposes rests on whether there was an express or implied

9   contract for individual representation.  Mot. (#54) at 18.  Notably, however, the court in discussing such

10  issues as implied contracts specifically cites to the laws of California.  Hackett fails to demonstrate why

11  such analysis should apply here, nor has he alleged what information, if any, he would have imparted

12  to Tratos in 2002 that has any bearing on the later filed copyright in 2005 such that he might meet his

13  burden of proving that the two matters are substantially related under Nevada law.  *See Waid*, *supra* at

14  1223; *Robbins*, 862 P.2d at 1197.

15       Instead, Hackett conclusorily states that the 2002 counseling "involved matters that are

16  substantially related to the subject of the present litigation, including intellectual property matters,

17  trademark issues, exploitation of a performer's identity, and the copyright registered by Hackett in

18  2005." Reply (#76) at 8.  These statements do no more than to assert a superficial connection between

19  the 2002 counseling and the current matter, insofar as each relate to the Show and may invoke copyright

20  law.  Hackett has not demonstrated, however, that he imparted confidential information to Tratos in

21  2002, in Hackett's individual capacity, that is substantially related to the script or copyright at issue in

22  the instant matter.  Based on the foregoing, the court finds that Hackett has not met his burden of

23  showing that any information, let alone "relevant" and/or confidential information was related from him

24  to Tratos that bears on the issues of the instant case such that disqualification Tratos or GT is warranted.

25  *See Robbins*, *supra* at 1197; *Waid*, *supra* at 1223.

26  . . .

10

***The Barton/Maryville Cases***

Hackett next asserts that Tratos and GT represented him personally in a set of consolidated matters, the Barton/Maryville Cases, which dealt with alleged copyright infringement of three songs used in the Show. TRP, and Hackett and Feeney as producers of the show, were named as defendants in the lawsuit.  It is undisputed that Tratos appeared as counsel of record, along with the law firm, Watson Rounds, in the Barton/Maryville cases.  Hackett argues that Tratos' name appearing as a counsel of record for TRP, Feeney, and Hackett on the docket in this matter is proof that Tratos acted as Hackett's individual counsel in these matters.  *See* Mot. (#54) at 8.  Defendants maintain that "counsel was engaged, exclusively by and on behalf of TRP, to provide expertise with regard to musical Grand Rights . . . " Opp'n (#67) at 15; and therefore Tratos and GT represented only TRP and its members in their capacity as LLC members, not as individuals, in the Baton/Maryville cases.

The general rule is that "a lawyer representing a corporate entity represents only the entity, not its officers, directors, or shareholders, and not any related entities such as parents. subsidiaries or sister companies." *Waid*, 119 P.3d at 1223.  While an individual attorney-client relationship may be implied in certain situations, such as where a lawyer performs personal legal services for the corporation as well as an individual member or where the organization is small and characterized by extensive common ownership and management, *see* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS §14, here the record is void of any evidence that Hackett and Tratos ever interacted in these matters.

As defendants note, Hackett never separately engaged GT or communicated with any attorney at GT on the matter; nor is there any record of Hackett attending a meeting with defendants' counsel on the matter, of defendants' counsel filing pleadings on Hackett's personal behalf, of any communications ever being set or copied to Hackett, or "of any work ever being performed on Hackett's behalf." Opp'n (#67) at 15.  Hackett does not refute these statements in his reply, but reasserts that Tratos' name on the docket as his attorney of record is proof that Tratos represented him individually.  Hackett does not allege that he had any direct contact with Tratos or directly conveyed any information, confidential or otherwise to Tratos.  He asserts only that he communicated with Tratos in these matters

through Feeney "as the point man."  Reply (#76) at 6.  Such an assertion only underscores the presumption that Hackett's relationship with Tratos in these matters was purely in his role as a member of the LLC.  Hackett has not demonstrated how he reasonably believed that he was engaged in a personal attorney client relationship with Tratos, despite not once communicating with him directly nor moreover about some legal issue personal to Hackett.  The facts as presented do not support a finding that Tratos individually represented Hackett's personal interests, as opposed the LLC's interests, in the Barton/Maryville cases.[5]

Again, however, even were the court to find otherwise,  Hackett does not meet his burden of establishing that the Barton/Maryville cases are substantially related to the instant case. The Barton/Maryville matter involved the use of copyrighted music, while the instant litigation involves a dispute over the 2005 copyright of a show, the very existence of which was unknown to defendants until the Barton/Maryville cases.  In his Motion (#54), Hackett maintains that a single deposition statement by Feeney "succinctly connected up the dots to the substantial relation of the Barton Music Cases to the instant action."  Mot. (#54) at 13.  Feeney stated that the 2005 copyright was a "gigantic club with which to negotiate and bring us down to our knees on a settlement."  However, as defendants point out, when read in the context of the rest of the deposition, Feeney's statement reveals nothing more than an acknowledgement that the existence of the 2005 copyright affected TRP's negotiation leverage insofar as it used wording that arguably required TRP to pay Grand Rights to use the music at issue in the case.

Such a revelation does not support a finding that the scope of representation and communication

---

[5]  Defendants do not assert that Tratos complied with Rule 1.13(f) to "take reasonable steps to ensure that the constituent realized that the lawyer's client is the organization rather than the constituent."  That fact, alone, does not support disqualification.  "The Rules presuppose that whether or not discipline should be imposed for a violation, and the severity of a sanction, depend on all the circumstances, such as the willfulness and seriousness of the violation, extenuating factors and whether there have been previous violations."  Rule 1.0A(c), Guidelines for Interpreting the Nevada Rules of Professional Conduct.  The record is void of any allegation of willful deception on the part of Tratos, nor moreover of circumstances to indicate that Tratos or Hackett could reasonably have concluded that Hackett could be confused as to the scope of representation in the Barton/Maryville cases, particularly in light of their never having communicated with each other.

in that matter expanded beyond the issue of TRP's right to use the music at issue in the Barton/Maryville cases to the validity of the 2005 copyright.  *See Waid*, *supra* at 1223.  Nor can it be reasonably inferred that Hackett gave confidential information to Tratos, in Hackett's individual capacity, that is related to the 2005 copyright.  *Id.*  Instead, he admits that he did not speak to Tratos about the 2005 copyright. *See* Hackett Aff. at ¶ 15-19.  Hackett alleges that he related some unspecified information to Feeney who then, as "point man" for TRP, related information to Tratos and other counsel.  Hackett has not demonstrated that any specific information, let alone "relevant" and/or confidential information, *see Waid*, *supra* at 1223, was relayed from Hackett to Tratos that bears on the issues of this case.  That both involve copyright issues proves nothing more than that the matters may be "superficially similar." *Robbins*, *supra* at 1197.  It is Hackett's burden to persuade the court that the matters are substantially related.  *Id.*  He has not done so.

**B. Plaintiff's Motion to Compel Client Files**

Hackett next argues that defendants should be ordered to produce the client files related to the 2002 counseling, the Barton Music Cases, the DRDC litigation (2005-2006), and the BC Entertainment litigation.  Mot. (#54) at 22.  Pursuant to Rule 1.16(d), "upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as . . . surrendering papers and property to which the client is entitled and refunding any advance payment for fees or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law."

Hackett is not entitled to these files.  The record indicates that these are the files of TRP and not of Hackett.  The court has already explained its reasons for rejecting Hackett's claim of personal representation by Tratos as to the 2002 Counseling and the Barton/Maryville cases.  Hackett admits that the law firm of Watson Rounds represented TRP in the DRDC matter, not Tratos or GT.  Mot. (#54) at 8.  As to the 2008 BC Entertainment/Harrah's action, Hackett states, "Tratos was also involved in counseling TRP regarding a dispute with Harrah's Casino in or about 2008," during which "Feeney served as 'point man' for dealing with the lawyers."  Mot. (#54) at 9.  Such assertions only underscore

13

1   that the LLP and not Hackett personally, was the client of Tratos in this matter.

2   **C. Plaintiff's Motion to Disqualify Mark Tratos from Serving as Trial Counsel**

3        Hackett moves to disqualify Tratos as trial counsel in this case because Hackett anticipates

4   calling him as a witness.  Mot. (#54) at 23.  Rule 3.7(a) provides that a lawyer shall not act as an

5   advocate at a trial in which he is likely to be a necessary witness unless (1) the testimony relates to an

6   uncontested issue, (2) the testimony relates to the nature and value of legal services rendered in the case

7   or (3) disqualification of the lawyer would work a substantial hardship.

8        Defendants do not oppose this part of the motion (#54).  "Failure to file points and authorities

9   in opposition to a motion is consent to its granting."  LR 7-2(d).  Further, as Hackett points out, Tratos

10  has been distant from the instant case, insofar as he has signed no pleadings, nor has he appeared in any

11  deposition taken by plaintiff. Mot. (#54) at 23.  Instead, Austin has acted as lead counsel throughout the

12  proceedings. It is neither argued nor is it apparent that defendants would suffer substantial hardship or

13  prejudice resulting from Tratos' disqualification as trial counsel.

14        Accordingly, and for good cause appearing,

15        IT IS ORDERED that Plaintiff's Motion to (1) Disqualify Greenberg Traurig, LLP; (2)

16  Disqualify Mark Tratos as Trial Counsel; (3) for Surrender of Client Files of Sandy Hackett; and (4) for

17  Leave to Take Mark Tratos' Deposition (#54) is GRANTED in part and only to the following extent:

18  Mark Tratos is disqualified from appearing as trial counsel in this matter.

19        IT IS FURTHER ORDERED that in all other respects the motion (#54) is denied.

20        IT IS FURTHER ORDERED that defendants' Motion to Compel Deposition of Sandy Hackett

21  (#50) is GRANTED to the extent that Hackett shall appear for deposition at a time and place convenient

22  to the parties. In all other respects, the motion (#50) is denied.

23        DATED this 18th day of October, 2010.

24

25        _____

26        **LAWRENCE R. LEAVITT**
          **UNITED STATES MAGISTRATE JUDGE**

                          14