# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SANDY HACKETT,<br><br>          Plaintiff,<br><br>    vs.<br><br>RICHARD FEENEY, an individual; ARTHUR PETRIE, an individual; TRP ENTERTAINMENT, LLC, a Nevada limited liability company, PLAYLV GAMING OPERATIONS, LLC d/b/a PLAZA HOTEL AND CASINO, a Nevada limited liability corporation, BROADWAY BOOKING OFFICE NYC, LTD, a New York corporation,<br><br>          Defendants.<br>_____<br>TRP ENTERTAINMENT, LLC, a Nevada limited liability company,<br><br>          Counterclaimant,<br><br>    vs.<br><br>SANDY HACKETT, an individual,<br><br>          Counterdefendant.<br>_____<br>TRP ENTERTAINMENT, LLC, a Nevada limited liability company,<br><br>          Third Party Plaintiff,<br><br>    vs.<br><br>THE HACKETT MILLER COMPANY, INC., a Nevada Corporation,<br><br>          Third Party Defendant.<br>_____ | Case No.: 2:09-cv-02075-RLH-LRL<br><br>**O R D E R**<br><br>(Motion for Leave to File Amended Counterclaim–#128; Motion for Partial Summary Judgment–#135; Motion for Partial Summary Judgment–#145; Motion for Partial Summary Judgment–#147) |

1

Before the Court are Third-party Defendants/Third-party Counterclaimant The Hackett Miller Company's ("Hackett/Miller") **Motion for Leave to File Amended Counterclaims** (filed Apr. 6, 2011), Defendant/Counterclaimant/Third-party Plaintiff TRP Entertainment, LLC's **Motion for Partial Summary Judgment** (#135, filed June 2, 2011) on its false advertising and unfair competition claims, all the Defendants' **Motion for Partial Summary Judgment** (#145, filed June 2, 2011) on Plaintiff Sandy Hackett's copyright infringement claim, as well as Hackett and Hackett/Miller's **Motion for Partial Summary Judgment** (filed June 23, 2011) on the issue of puffery.  The Court has also considered the relevant Oppositions and Replies filed by the parties.

## BACKGROUND

Because the facts of this case are complicated the Court will only summarize the background necessary to generally explain this dispute, resolve these motions, and generally outline the procedural posture of this case.

Plaintiff Sandy Hackett and Defendants Richard Feeney and Arthur Petrie formed TRP Entertainment in 2002 to produce a live tribute show to the Rat Pack (as composed of Frank Sinatra, Dean Martin, Sammy Davis, Jr., and Joey Bishop).  TRP Entertainment began production of the show (eventually titled "The Rat Pack is Back," though they have given it various names over the years), performing it here in Las Vegas and internationally.  Hackett wrote the script for the show and acted in it as well.

In 2005, Hackett filed a copyright registration with the United States Copyright Office for the script he had originally created much earlier.  The application matured into United States Copyright Registration No. PA 1-284-402, which is the copyright originally in dispute in this case.  Hackett has since filed more copyright registrations for revisions to his script and filed to modify his original registration to correct certain errors.

In 2006, Feeney and Petrie contend that they bought out Hackett's interest in TRP Entertainment for $40,000, which Hackett disputes.  Regardless of any possible buyout, Hackett

1  continued his involvement in the production until 2009. At that point tension amongst Hackett,
2  Feeney, and Petrie arose and Hackett was terminated from any further involvement with the show.
3  The next day, Hackett informed Feeney, Petrie, and TRP Entertainment that he terminated "any
4  license or consent he may have granted" in his copyrighted materials. (Dkt. #1, Compl. ¶ 21.)
5  Defendants apparently did not cease production of their show and allegedly continued to use
6  Hackett's copyrighted material in the show.

7  After being separated from TRP Entertainment in 2009, Hackett formed
8  Hackett/Miller with his wife (the "Miller" in Hackett/Miller) to produce a "new" tribute show to
9  the Rat Pack based on Hackett's same script. (The degree to which Hackett/Miller's show is truly
10 new is disputed in this litigation.) Hackett/Miller created a website using the TRP Entertainment's
11 original website designer and based off the same html and graphical code base to promote their
12 show, Sandy Hackett's Rat Pack Show. The website (and posters, billboards, etc.) included claims
13 which TRP Entertainment contends are false advertising as they were either actually given to TRP
14 Entertainment's show or simply false entirely.

15 On October 28, 2009, Hackett filed suit alleging multiple claims, however, only the
16 copyright infringement claim is discussed in this order. TRP Entertainment then filed various
17 counterclaims against Hackett and a third-party complaint against Hackett's new company,
18 Hackett/Miller, but only the false advertising and unfair competition claims are discussed in this
19 order. Finally, Hackett/Miller also filed counterclaims against TRP Entertainment, which it seeks
20 to amend here. For the reasons discussed below, the Court denies TRP Entertainment's motion on
21 false advertising and unfair competition, denies Defendants motion on copyright infringement,
22 grants Hackett and Hackett/Miller's motion on puffery, and denies Hackett/Miller's motion for
23 leave to amend.
24 /
25 /
26 /

## DISCUSSION

**I.     Motion for Leave to Amend to Add Counterclaims**

    **A.     Legal Standard**

Under Rule 15 of the Federal Rules of Civil Procedure, a party may amend its complaint only by leave of the court after 21 days have passed since responsive pleadings have been filed and in the absence of the adverse party's written consent. *Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 799 (9th Cir. 2001). The court has discretion to grant leave and should freely do so "when justice so requires." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (quoting Fed. R. Civ. P. 15(a)). Nonetheless, courts may deny leave to amend if it will cause: (1) undue delay; (2) undue prejudice to the opposing party; (3) the request is made in bad faith; (4) the party has repeatedly failed to cure deficiencies; or (5) the amendment would be futile. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

However, "a request for leave to amend made after the entry of a Rule 16 Scheduling Order is governed primarily by Rule 16(b)," rather than Rule 15. *C.F. v. Capistrano Unified School Dist.*, 656 F. Supp. 2d 1190, 1192 (C.D. Cal. 2009) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608–09 (9th. Cir. 1992)). Rule 16(b) and Local Rule 26-4 require a showing of "good cause" before modifying a scheduling order. *See Mammoth Recreations*, 975 F.2d at 608–09. Only if the moving party shows good cause under Rule 16 does the Court then consider whether amendment is proper under Rule 15. *Id.* In other words, the Court first determines whether amendment of the scheduling order to extend the time for amending the pleadings is proper and then determines whether the actual amendment is proper under Rule 15.

    **B.     Analysis**

Hackett/Miller seeks to amend its answer to include three additional causes of action: (1) a declaratory judgment claim that "The Rat Pack" is generic in reference to live shows covering the Rat Pack; (2) cancellation or modification of the "The Rat Pack Is Back" mark because of genericness; and (3) cancellation of the "The Rat Pack Is Back" mark because of naked

1  licensing. However, Hackett/Miller has failed to show good cause for amending the scheduling
2  order to allow for amending its answer to include these additional counterclaims. As
3  Hackett/Miller has not met the Rule 16 standard, the Court does not address the more liberal Rule
4  15 standard for amending the pleadings.

5  It is too late in this litigation to add claims that are only somewhat relevant or that
6  would require the Court to reopen discovery. At the time this motion was filed, discovery was still
7  open. However, discovery closed in this case in July, it is now September and trial is scheduled
8  for October. While discovery may not be necessary for Hackett/Miller's first two proposed
9  additional counterclaims, a substantial amount of discovery would be necessary for the naked
10 licensing claim. *See generally*, Anne Gilson LaLonde, *Gilson on Trademarks* § 6.04. Further,
11 Hackett/Miller's proposed reasons for needing to add the naked licensing claim at this time are
12 insufficient to delay trial and reopen discovery. Thus, the Court denies amendment as to the third
13 proposed additional counterclaim.

14 As to the first two proposed additional counterclaims, Hackett/Miller argues that
15 these claims are necessary only because *TRP Entm't, LLC v. BC Entm't, Inc.*, 2:08-cv-579-LDG-
16 RJJ, 2009 WL 5102960 (D. Nev.) was recently dismissed for failure to prosecute despite the
17 Honorable Lloyd D. George granting summary judgment in favor of BC Entertainment on these
18 same claims. However, on the same day this motion was filed, a motion to reconsider the
19 dismissal was filed in *BC Entm't*. Judge George has since granted that motion, vacated the
20 dismissal, and entered a partial judgment granting much of the relief Hackett/Miller wishes to seek
21 with these amended counterclaims (specifically a ruling that "The Rat Pack" is generic in reference
22 to the Rat Pack and an order that the U.S. Patent and Trademark Office add a disclaimer to TRP
23 Entertainment's trademark for "The Rat Pack Is Back" mark), thus negating much of
24 Hackett/Miller's argument and reasons for needing to add these counterclaims. For all of the
25 above reasons, the Court denies the motion to amend.
26 /

AO 72
(Rev. 8/82)

## II. Motions for Partial Summary Judgment

### A. Legal Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to

1  "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.
2  The nonmoving party "may not rely on denials in the pleadings but must produce specific
3  evidence, through affidavits or admissible discovery material, to show that the dispute exists,"
4  *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply
5  show that there is some metaphysical doubt as to the material facts." *Bank of America v. Orr*, 285
6  F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).  "The mere existence of a scintilla of
7  evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

    **B.**    **Analysis**

The Court will address the motions on false advertising and puffery together as they relate to the same issues and determination of one results in partial determination of the other.  The Court will then address the motion on infringement separately.

    **1.**    **Motion on False Advertising and Unfair Competition Claims and Countermotion on Puffery**

TRP Entertainment makes three allegations of false advertising against Hackett/Miller under § 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a), and unfair competition under NRS 598.0915.  They are: (1) that Hackett/Miller's website claimed two awards it had not won (specifically "Best Entertainment Website and Best of Show" from the "2006 Electronic Media Awards"); (2) Hackett/Miller misattributed testimonials from *What's On* magazine and *Player Magazine* to its show on its website; and (3) Hackett/Miller displayed banners, posters, and billboards including the statement "Voted #1 Best Show in Vegas!" surrounded by a laurel wreath ("'Voted #1' Statement'").  The Court will first address Hackett/Miller's puffery defense and then address the remaining claims.

    **i.**    **Puffery**

The Ninth Circuit has described puffery as "exaggerated advertising, blustering and boasting upon which no reasonable buyer would rely and is not actionable under [§] 43(a)." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir.1997) (quoting 3 J.

Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 27.04[4][d] (3d ed.1994)); *see also Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (stating that "[p]uffing has been described by most courts as involving outrageous generalized statements, not making specific claims, that are so exaggerated as to preclude reliance by consumers"). Here, TRP Entertainment takes issue with the "Voted #1" Statement. TRP Entertainment argues that there was never an official vote (Hackett/Miller apparently didn't want the Democrats or Republicans involved, didn't hold voter registration drives, and didn't want to get involved with the intricacies of election or campaign finance law) making this a literally false statement and therefore false advertising under the Lanham Act.

In reality adding the word "Voted" does not substantively change the context much, though maybe some. It is no different than the addition of the word "Considered" or "Rated" or anything similar. All of these words (voted, considered, rated, etc.) in combination with "#1 Best Show in Vegas" beg the question: By whom? Without answering that critical question there is no specific claim and the statement is simply exaggerated advertising which precludes reliance by consumers. However, the line between this and false advertising may be a thin one. Had Hackett/Miller included "By X," it would be false advertising unless X had actually voted the show "#1 Best in Vegas." But it did not and, therefore, is mere puffery, not actionable under the Lanham Act as no one can take real meaning from the phrase in the context of no actual endorsement from a voting body.

Both parties attempt to compare this case to *Southland Sod* for their own benefit. In *Southland Sod*, a company advertised their product as requiring 50% less mowing without directly comparing it to any other product. 108 F.3d at 1145. However, a critical aspect of *Southland Sod* is that the advertisement expressly stated that the claim was based on tests conducted by the advertiser's research farm that were never done. *Id.* This would have been similar to Hackett/Miller saying "by X" in reference to the vote since the defendant in *Southland Farms* said

"tests conducted by our research farm." *Id.* But, again, Hackett/Miller did not include that part and, therefore, merely engaged in puffery.

### ii. Remaining Claims

As the Court has concluded that the "Voted #1" statement was mere puffery, it need not further consider it. However, the remaining claims of false advertising deal with statements that were not puffery and they will be dealt with here.

For a claim of false advertising to succeed under the Lanham Act, a plaintiff (or counterclaimant) must prove that: "'(1) the defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in commercial advertisement or promotion; (3) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (4) the deception is material; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the defendant, or by a lessening of goodwill associated with the plaintiff's product.'" *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1052 (9th Cir. 2008) (quoting *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 n.4 (9th Cir. 2002)). As each element is required, if a material, factual issue remains as to any element, summary judgment is improper.

### a. "Voted #1" Statement

TRP Entertainment has not met its burden to show that the allegedly false statements are material. TRP contends that it need not show that the statements are material but that the Court should presume that any false statement that was intentionally and literally false is also material. For this proposition, TRP cites numerous cases from outside the Ninth Circuit, but none from within. (*See* Dkt. #146, Reply at 11:26-28–12:1-17.) Some of the false advertising in the cases TRP Entertainment cites is egregious and the courts recognize that they apply this presumption in light of the egregious conduct present in their cases. *See, e.g.*, *PPX Enter., Inc. v. Audiofidelity Enter., Inc.*, 818 F.2d 266 (2d Cir. 1987) (recording company claimed that albums

1  contained performances by Jimi Hendrix when they did not and comparing the conduct to selling
2  knock-off handbags marked as Louis Vuitton).  Here, Hackett/Miller placed on its website a
3  reference to a website award that isn't even about the actual show but the website design.  The
4  conduct here is not nearly so obviously material as in TRP Entertainment's examples which may
5  warrant a presumption of materiality not requiring actual proof.
6              TRP Entertainment also tries to convince the Court that its website won the
7  advertised award.  And while this is true to an extent, the evidence suggests that it was the web
8  designer (who entered the contest independent of TRP Entertainment and later designed the
9  Hackett/Miller website from the same html codebase) that won the award.  (Dkt. #142, Resp. and
10 Countermot. Ex. A, Quinn Decl.)  A website, like a science fair project, does not win an award
11 independently.  The designer/student wins the award for the particular entry.  However, TRP
12 Entertainment is correct that winning an award at one point does not entitle the designer/student to
13 claim that future projects have won awards even though they would be able to claim that they (the
14 designer/student) themselves had won awards on previous projects.[1]  However, the point remains:
15 How is this material to purchasing (or advertising) tickets to a live tribute show to the Rat Pack?
16 Who determines what show they are going to go see on the Strip based on the fact that the website
17 they purchase the tickets from has won a design award?  The website isn't even the product being
18 sold.  This is like choosing your hotel based on it having an award-winning booking system: Who
19 cares?  The Court is not sure and will therefore leave it to a jury to determine whether website
20 award claims on the website are material.

---

[1] Some question may still exist here.  As an example, George Lucas and Lucasfilm, Ltd. have continued to modify the classic Star Wars movies with pretty much every new release (dvd, blu-ray, special editions, etc.). The original films won multiple awards (Oscars, Golden Globes, etc.).  Can the new blu-ray release claim these awards even though it has been modified?  The casual answer would be 'yes, it's practically the same movie.' Is there a difference with this website and these facts, obviously.  But where is the line drawn, what factual changes are necessary for an award to no longer apply to a revision of the original?  If Lucasfilm transferred the copyright to the films and the new owner made a few modifications, could that company claim the original awards?  The Court need not answer these questions here because of the materiality issue, but it is an interesting quandary.

                                    **b.**        **Magazine Testimonials**

The situation is somewhat different with the magazine testimonials, however, the Court still denies summary judgment. The magazine testimonials were given to TRP Entertainment's show, before the Hackett/Miller show even existed. Therefore, it appears that attributing them to the Hackett/Miller show is literally false, material, and meets the other requirements for false advertising under the Lanham Act. However, when these accolades were given, the TRP Entertainment show was Hackett's script, Hackett was a key actor in the show, and Billy Karl was the director. Now, Hackett's same script is the basis for the Hackett/Miller show, Hackett apparently plays the same part as he did in the TRP Entertainment Show, Billy Karl directs the Hackett/Miller show (Dkt. 135, Mot. Ex. D, Website Excerpts), and there are other ways in which the two shows are the same (at least at the time the statements were displayed online). Further, TRP Entertainment admits to having the same statements on its own website (Dkt. #135 Mot. 5:11-13) despite the fact that its show was no longer the same show the magazines originally commented on as TRP Entertainment claims to have modified it in contesting copyright infringement (Dkt. #155, Mot. 11:1-3). The Court has not seen evidence as to what differences there were between the shows, particularly between the show the magazines commented on and the Hackett/Miller show at the time of the advertisements. Nonetheless, Miller admits that the statements were posted in error and that Hackett/Miller eventually removed the claims. This situation leaves the Court with many questions best determined at trial and, therefore, unwilling to grant summary judgment. The Court concludes that the issue of the script and the general sameness and interrelations of the two shows precludes summary judgment as factual questions remain for a jury.

                                    **c.**        **Unfair Competition Claims**

The Court denies summary judgment on the claims under NRS 598.0915 for unfair competition as the questions as to falsity and materiality present in the Lanham Act claims also exist in the unfair competition claims. Further, in its arguments on the unfair competition claims,

11

1  TRP Entertainment argues that the inclusion of the website awards implies that the Hackett/Miller
2  show was "approved and sponsored by the Electronic Media Awards" (Dkt. 135, Mot. 16:4).  This
3  doesn't even make sense as the awards were for website design and had nothing to do with either
4  show itself and none of the statements had anything to do with "sponsorship."  As fact questions
5  remain, the Court denies summary judgment on these claims as well.

6  **2.    Motion on Copyright Infringement Claim**

7  In this motion Defendants seek summary judgment on Hackett's copyright claim
8  based on two arguments.  First, Defendants argue that Hackett's copyright registration is invalid,
9  and therefore cannot support a copyright infringement action, because the deposit copy is not a
10  bonafide copy of the registered work.  Second, Defendants argue that Hackett granted TRP
11  Entertainment an oral, non-exclusive license of indeterminate duration that Hackett could not
12  terminate at will as he purports to have done.  The Court addresses each issue below and holds that
13  there are material, factual issues regarding each issue sufficient to prevent summary judgment.

14  **i.    Registration**

15  Defendants argue that Hackett cannot prosecute his copyright claim because his
16  copyright registration in invalid.  The Copyright Act provides that "no civil action for infringement
17  of the copyright in any United States work shall be instituted until preregistration or registration of
18  the copyright claim has been made ...."  17 U.S.C. § 411(a).  The Ninth Circuit follows the
19  "application approach" to the registration requirement.  *Cosmetics Ideas, Inc. v.*
20  *IAC/InteractiveCorp.*, 606 F.3d 612, 621 (9th Cir. 2010).  This means that a copyright holder
21  meets the registration requirement of § 411(a) upon submitting an application for a registration,
22  *i.e.* the copyright holder need not wait until the registration is approved (or denied for that matter).
23  *Id.* at 621.  Thus, to bring a copyright infringement suit a copyright holder must have filed an
24  application for a copyright registration.  Nonetheless, if a registration (or, by implication, an
25  application) is invalid, the "infringement action is foreclosed.  *Kodadek v. MTV Networks, Inc.*,
26  152 F.3d 1209, 1212 (9th Cir. 1998).

1          Defendants contend that Hackett's copyright registration is invalid (and cannot
2   support a copyright claim) because the deposit copy was not the same as the work that was
3   registered.  For a valid copyright registration, "an applicant must deposit as a part of his
4   application a 'copy' or 'copies' of the work." *Kodadek*, 152 F.3d at 1211 (quoting 17 U.S.C. §
5   408(b)(1) and (2).  This requirement only "permits 'bona fide copies of the original work.'" *Id.*
6   (quoting *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1322 (9th Cir. 1986).  A separate registration
7   must be made to enforce a copyright on a derivative or revised version of a work.  *Murray Hill*
8   *Publications, Inc. v. ABC Communications, Inc.*, 264 F.3d 622, 630 (6th Cir. 2001) ("the
9   derivative work is distinct from the preexisting work, and, therefore, the derivative work must be
10  registered before an infringement suit may be brought.") (*abrogated on other grounds by Reed*
11  *Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237 (2010)).  Where the deposit is not a bonafide copy of
12  the registered work but a recreation or revised version, a court may invalidate the registration and
13  deny relief in an infringement suit.  *See Kodadek*, 152 F.3d at 1210 (copyright infringement claim
14  failed where plaintiff deposited recreated drawings made in 1993 as the deposit for drawings that
15  the application identified as being created in 1991); *Seiler, Ltd.*, 808 F.2d at 1322 (9th Cir. 1986)
16  (registration deposit requirement permits bona fide copies only).
17          Here, Hackett testified that the copy he deposited with his copyright application
18  identifying the work as created in 2001 was a copy of the script as modified through 2005.  (Dkt.
19  #145, Mot. Ex. A, Sandy Hackett Depo. III, 362:11-363:8.)  Thus, the deposit copy is not a
20  bonafide copy of the work as it existed in 2001, but a copy of the revised 2005 version.
21  Apparently because of this error, Hackett has filed to supplement his registration to identify the
22  copyrighted work as created in 2005 and correct other errors.  (*See* Dkt. #153, Resp. Ex. D, Form
23  CA for Supplementary Registration.)  Hackett has also filed new copyright registration
24  applications for various versions of the Work that Hackett produced to Defendants during
25  discovery in this case.  (*Id.* Ex. B, Copyright Registration Applications.)  As this registration error
26  /

appears to have been corrected, the Court is unwilling to invalidate the copyright registration on this basis. At the very least, there are questions as to the validity of the registration on this point.

Defendants further argue that Hackett's efforts to rectify the registration are immaterial as even the supplemental registration is flawed because it only notes Hackett as author whereas Hackett has testified that he incorporated material from others. (Dkt. #155, Reply Ex. A, Hackett Depo. II, 167-169, 228-230.) The Court is unpersuaded by this reasoning. Defendants fail to cite law that any contribution's originator must be cited as a co-author on a copyright registration or application. Defendants do not even address the factors the Ninth Circuit set forth in *Aalmuhammed v. Lee*, 202 F.3d 1227, 1234 (9th Cir. 2000) to determine joint authorship of the work.[2] Thus, the Court is unprepared to state, without citation and analysis of relevant authority, that every ad-libbed line by an actor that is incorporated into a production makes that actor a co-author of a work or that suggestions by an author's father, friends, or co-workers brought in piece-meal make them co-authors. The Court is further unprepared to hold as a matter of law that Hackett's registration is invalid because of the possibility of co-authorship claims and would have been denied by the Copyright Office on such a basis. Accordingly, Defendants have failed to meet their burden of showing that no factual questions remain and that summary judgment on Hackett's copyright claim is appropriate under this reasoning. In fact, there are many fact questions as to whether any of these individuals would be considered co-authors under *Aalmuhammed*.

### ii.    Oral License

Defendants fail to show that there are no material, factual questions on the issue of whether Hackett granted them an oral, non-exclusive license of indeterminate duration which could not be terminated. Defendants contend that it is undisputed that Hackett granted TRP

---

[2] The factors are: (1) "whether the 'putative coauthors ma[de] objective manifestations of a shared intent to be coauthors,'" (2) "whether the alleged author superintended the work by exercising control," and (3) "whether 'the audience appeal of the work' can be attributed to both authors, and whether 'the share of each in its success cannot be appraised.'" *Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 968 (9th Cir. 2008) (alteration in original) (quoting *Aalmuhammed v. Lee*, 202 F.3d 1227, 1234 (9th Cir. 2000)). Defendants do not mention these factors, either explicitly or implicitly in their argument.

14

Entertainment an oral, non-exclusive license of indeterminate duration because Hackett's attorney wrote them a letter terminating "any license or consent [Hackett] may have granted [Defendants] to utilize his copyrighted material or other creative materials ...." (Dkt. #1, Compl. ¶ 28.) This fact does not show that the material issues are undisputed. A termination of anything Hackett "may have granted" does not admit that he granted anything. A reasonable jury could easily determine that Hackett was merely attempting to be cautious and clear up potential confusion rather than admitting to the existence of a license.

Further, Hackett stated in his response that he did not grant a license, but merely let TRP Entertainment use his copyrighted material while he was part of TRP Entertainment. This acknowledgment might be evidence of a non-exclusive, oral license, but it is not evidence that the term is or was indeterminate.[3] A reasonable jury could find in favor of Hackett by determining that the understanding was (or the terms were) that the license terminated if and when Hackett left TRP Entertainment or at will. Further, the mere existence of a license does not eliminate the possibility of copyright infringement. A licensor may infringe a copyright by exceeding the scope of its license. *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081 1087–88 (9th Cir. 1989). In this case, a reasonable jury could determine that TRP Entertainment's use of the copyright exceeded the scope of its license, if one existed, by revising the material after Hackett left. Due to the limited

---

[3] Defendants cite *Rano v. Sipa Press, Inc.*, 987 F.2d 580 (9th Cir. 1993) for the proposition that an oral license of indeterminate length cannot be terminated at will in the Ninth Circuit. Defendants are correct in their interpretation of *Rano* and that it is the law of the Ninth Circuit. Nonetheless, the Circuit Court was wrong in its interpretation of § 203. *Walthal v. Rusk*, 172 F.3d 481, 483–85 (7th Cir. 1999) (describing and quoting commentators' disagreement with *Rano* and holding contrary to *Rano*); *Korman v. HBC Fla., Inc.*, 182 F.3d 1291, 1295–96 (11th Cir. 1999) (explaining the Ninth Circuit's statutory construction errors); *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 172–173 (1985) (recognizing the purpose of § 203 as to help authors terminate licenses, not limit their ability to do so); 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyrights* § 11.01 (2000) (criticizing the *Rano* decision and noting that the decision ignored the statutory language that "Termination of a grant under this section . . . in no way affects rights arising under any other Federal, State, or foreign laws" such as the ability to terminate licenses of indeterminate length at will); *Scholastic Entm't, Inc. v. Fox Entm't Group, Inc.*, 336 F.3d 988 n.2 (9th Cir. 2003) (noting the criticism of the *Rano* decision even though unnecessary to the determination of the case). In short, other Courts of Appeal and noted copyright scholars reject the *Rano* decision and find that it is clearly wrong. The Court finds that application of the *Rano* decision is not necessary in this order. However, due to errors present in the *Rano* decision, the Court could not in good conscience apply such erroneous law and would hold that Hackett could terminate an oral license as allowed under Nevada law.

AO 72
(Rev. 8/82)

evidence surrounding the context and extent of the license, there are factual issues left for determination at trial and summary judgment would be inappropriate.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Hackett/Miller's Motion for Leave to File Amended Counterclaims (#128) is DENIED.

IT IS FURTHER ORDERED that TRP Entertainment's Motion for Partial Summary Judgment (#135) is DENIED.

IT IS FURTHER ORDERED that TRP Entertainment's Motion for Partial Summary Judgment (#145) is DENIED.

IT IS FURTHER ORDERED that Hackett and Hackett/Miller's Motion for Partial Summary Judgment (#147) is GRANTED.

Dated: September 8, 2011.

_____
**ROGER L. HUNT**
**United States District Judge**

AO 72
(Rev. 8/82)