UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

SANDY HACKETT,　　　　　　　　　　）
　　　　　　　　　　　　　　　　　　）
　　　　　　Plaintiff,　　　　　　　）
　　　　　　　　　　　　　　　　　　）　2:09-cv-02075-RLH -LRL
v.　　　　　　　　　　　　　　　　　）
　　　　　　　　　　　　　　　　　　）　**O R D E R**
RICHARD FEENEY, *et al.*,　　　　　）
　　　　　　　　　　　　　　　　　　）
　　　　　　Defendants.　　　　　　　）
　　　　　　　　　　　　　　　　　　）

Before the court is plaintiff Sandy Hackett's Motion to Compel (#149). Defendant Arthur Petrie filed an Opposition (#154), and plaintiff filed a Reply (#156).

Plaintiff filed his complaint (#1) on October 28, 2009, asserting claims for (1) copyright infringement, (2) rescission, (3) dissolution of limited liability company, (4) fraud, (5) conspiracy to commit fraud, (6) breach of fiduciary duty, (7) breach of contract, (8) misappropriation of right of publicity, (9) declaratory relief, (10) constructive trust, and (11) for an accounting. He alleges that his business "partners" in TRP Entertainment, LLC, Richard Feeney and Arthur Petrie, "victimized and discarded him, instead of rewarding him for creating, writing, and producing his hit Las Vegas stage production of "The Rat Pack."" (#1). Specifically, he contends that they had a scheme to misappropriate all of his interest in the show and to keep the profits for themselves. *Id.*

Defendants Petrie and Feeney deny having any "scheme," and instead assert that they bought out Hackett's entire interest in TRP Entertainment in 2006, for $40,000. Hackett argues that despite this, from 2006 until 2009, "it is undisputed that Hackett continued to play an integral role in the business of TRP and the production of its show." (#149). Hackett also contends that he "continued to receive compensation and "distributions" that were markedly similar to those received by both Petrie and Feeney..." *Id.* He therefore contends that his ownership interest, and those of Feeney and Petrie

in TRP between 2005 and 2009 are key to the dispute in this case.

**Motion To Compel**

Federal Rule of Civil Procedure 34(a) permits each party to serve the opposing party with document requests within the scope of Rule 26(b) that are "relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b). Relevance within the meaning of Rule 26(b)(1) is considerably broader than relevance for trial purposes. *See Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted). For discovery purposes, relevance means only that the materials sought are reasonably calculated to lead to the discovery of admissible evidence. *Id*. In responding to Rule 34 requests, "the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). Pursuant to Rule 37(a)(3)(B)(iv), "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if "a party fails to respond that inspection will be permitted – or fails to permit inspection – as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv).

In the present motion (#149), Hackett asks this court to compel Petrie to produce his entire tax returns for 2005 through 2009. He contends that the tax returns are not only relevant to the present litigation, but the production thereof was expressly agreed to by the parties. (#149 Exhibit 3). Further, he seeks sanctions in the form of attorneys fees for the costs of filing the present motion.

    **A.**    **Relevant Facts**

Beginning in June of 2011, the parties began discussing the issue of tax returns. After not being satisfied with the production of Hackett's redacted 2007 tax return, on June 2, 2011, defense counsel sought the production of "all [Hackett's tax] returns through 2009, unredacted." (#149 Exhibit 3). On June 3, 2011, Hackett's counsel responded to the request and stated that he has been "seeking information regarding the Sound Tracs accounts since November 2010," and that "it seems only fair that if [defendant is] demanding that [plaintiff] turn over the entire personal tax returns for Hackett, then [they] should likewise produce Dick Feeney and Art Petrie's personal tax returns for the same time period..." *Id.* Counsel asserted that he would then be able to, among other things, "confirm how TRP's

2

1  distributions were reported on the subject tax returns and verify how Feeney and Petrie reported the
2  $40,000 in income on their respective returns in 2006." *Id.*  In the same e-mail, Hackett's counsel
3  confirmed that he would produce Hackett's un-redacted returns for 2005 through 2009, if he could
4  confirm the same for Petrie and Feeney. *Id.*  Additionally, Hackett's counsel advised that the tax returns
5  were to be designated "confidential-attorneys eyes only." *Id.*

6  Later on that same day, defense counsel confirmed that Feeney and Petrie would produce their
7  un-redacted tax returns for 2005-2009, and would produce information relating to the Sound Tracs
8  accounts "once all the Hackett returns [had] been produced." *Id.*  This agreement was confirmed in two
9  subsequent e-mails.  *Id.*  (Hackett's counsel stated "I confirm this is our understanding;" defense
10 counsel responded, "[w]e are in accord.").  On June 6, 2011, Hackett mailed defense counsel a CD
11 containing his requested tax returns. When the parties spoke on June 7, 2011, however, defense counsel
12 indicated that Petrie was unwilling to turn over his entire tax returns; rather, he would produce only his
13 Schedule K-1s. In an e-mail dated June 7, 2011, Hackett's counsel stated that in light of Petrie's refusal,
14 he would "reach out to his client about whether [the] original agreement can be changed" or whether
15 they could agree to allow only *review* of the documents.  *Id.*  Additionally, he asked that he be notified
16 if defense counsel heard from Mr. Petrie regarding his tax returns. *Id.*

17 Due to the fact that he had already turned over Hackett's tax return, counsel asserted that he
18 thought "the fairest approach would be for [defense counsel] to likewise mail [Hackett's counsel] a CD
19 with copies of Mr. Feeney's returns." *Id.*  The parties agreed that the CDs would be held in "escrow,"
20 unopened, until the issue among the parties could be resolved.  *Id.*  Defense counsel assured Hackett's
21 counsel that they would forward Fenney's returns and produce the Sound Tracs records.  *Id.*  Further,
22 he stated that he had not yet heard back from Petrie, but that he would "hopefully" have a "definitive
23 response from him by tomorrow...regarding his returns." *Id.*  Subsequently, Feeney's returns were
24 delivered to Hackett's counsel. Despite Hackett's good faith attempt to meet and confer to resolve the
25 issue of Petrie's returns as required by Fed. R. Civ. P. 37(a)(1), Hackett has not received Petrie's tax
26 returns for the relevant time period.

3

### B.     Relevance of Petrie's Tax Return

Hackett contends that the tax returns of all three TRP partners are "key in the instant litigation." He alleges that "the manner in which Hackett, Feeney, and Petrie received compensation from TRP between 2005 and 2009 is relevant in demonstrating the respective ownership interest in each." (#149). Hackett asserts that the ownership interests are "at the core of this litigation," as Hackett's total damages will be based, at least in part, on the distributions and income that Petrie and Feeney received from TRP and related investments, which Hackett did not receive and arguably should have, had he been properly treated as a member. (#156). Hackett asserts that the relevance of the requested documents is "further bolstered by the fact that both sides have requested that the other produce their respective returns." *Id.* Additionally, Hackett claims that Feeney would not have been willing to produce his tax return if it was irrelevant, and that it cannot be said that Petrie's return is any less relevant than his co-defendant's.

Petrie doesn't dispute that tax returns are "key evidence" in this case**.** (#154). He does contend, however, that Hackett's tax returns are the *only* relevant returns. Inasmuch as Hackett alleges that the $40,000 he received in 2006 was not actually a buy-out of his interest, and that he remained active in the company, Petrie asserts that the issue is how *Hackett* reported income he received from TRP during the time period he was not a member. *Id.* In contrast, he asserts, Feeney and Petrie's returns are not relevant because "there is no dispute regarding whether [they] remained partners of TRP." *Id.* Thus, Petrie contends that the only relevant tax returns are Hackett's.

In addition to being irrelevant, Petrie asserts that the production of his complete tax returns is unnecessary and overly burdensome. First, defendants have disclosed their Schedule K-1s to plaintiff for the pertinent years, "revealing both of their shares of income related to TRP." Defendant Petrie contends that since the Schedule K-1s contain the "Partner's Share of Income, Deductions, Credits, Etc.," they are the *only* portions of their returns that are *at all relevant* to the instant suit. Thus, as plaintiff has been provided with these relevant portions, producing his complete tax returns is unnecessary. Second, Petrie asserts that he is primarily an investor, and that "his earnings from TRP make up only a tiny fraction of his yearly income." Therefore, "[f]our years' worth of [his] tax returns

4

easily take up an entire room..." It would be unreasonable, defendant asserts, for him to have the burden of such a "large and gratuitous production" of such an extremely sensitive nature: a burden that is not outweighed by the benefit of the documents.

### C.    Mutual Agreement To Produce Tax Returns

Hackett contends that the production of Petrie's complete tax returns is warranted not only because they are relevant, but also because the parties had an express agreement regarding the terms and timing of such production. He contends that the e-mails between the parties (#149 Exhibit 3) reflect the agreement the parties entered into. During the multiple conversations between the parties, Hackett argues that there was never a condition put on the agreement, but that defense counsel represented that they were "in accord" with the agreement. Additionally, even *after* Petrie refused to comply, defense counsel stated that he would be trying to get "a definitive response" from his client regarding the production of the tax return. Lastly, Hackett had already complied with the agreement *prior* to being notified that Petrie was unwilling. Thus, Hackett contends, it would be unfair for him not to receive the benefit of his bargain.

Petrie argues that the agreement between the parties was a "tentative agreement" that was modified after Petrie's counsel learned that Petrie wouldn't comply. (#154). Specifically, counsel asserts that once he learned of Petrie's refusal and conveyed it to plaintiff's counsel, the parties agreed that "the fairest thing to do" would be to send Feeney's tax return and to produce the Sound Tracs discovery *in exchange* for Hackett's returns. It is Petrie's position that Hackett's counsel knew of his refusal *prior* to sending Hackett's returns. Therefore, he contends, "counsel understood that release of Hackett's returns was not dependent on the release of Petrie's returns, and as such, the original agreement between the parties on this issue had been modified." *Id.*

### D.    Discussion

The court has broad discretion in controlling discovery. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). It may limit discovery if it determines, among other things, that the discovery is unreasonably cumulative or duplicative, obtainable from another source that is more convenient, less

1  burdensome, or less expensive, or the burden or expense of the proposed discovery outweighs its likely
2  benefit. Fed. R. Civ. P. 26(b)(2). Given the sensitive and confidential nature of tax returns, the court
3  has the discretion to compel the disclosure thereof only where they are clearly relevant to the claims at
4  issue. *Ullmann v. Hartford Fire Ins. Co.,* 87 N.J. Super 409, 415-16, 209 A.2d 651, 654 (App. Div.
5  1965)("[P]roduction of tax returns should not be ordered unless it clearly appears they are relevant to
6  the subject matter of the action or to the issues raised thereunder, and further, that there is a compelling
7  need therefor because the information contained therein is not otherwise readily obtainable.").
8  Moreover, where relevance of the tax returns is established, "disclosure of entire returns should never
9  be ordered if partial disclosure will suffice..." *Id.* at 416, 209 A.2d at 654.

10  Here, the court recognizes that the parties had an agreement regarding the production of their
11  complete tax returns and that tax returns are relevant to this case. However, the court is puzzled as to
12  why the parties would agree to produce irrelevant portions of their tax returns, in light of the sensitive,
13  confidential nature of such documents. Therefore, the court finds that in the present situation, "partial
14  disclosure [of the tax returns] will suffice." *Id.* As the court understands it, the only relevant portions
15  of any of the parties' 2005-2009 tax returns are the Schedule K-1s and the Form 1040s. Using these
16  documents, Hackett should be able to determine the "manner in which [each party] received
17  compensation from TRP" for the years in question, and should be able to compute his alleged damages
18  based on the income Petrie and Feeney received that "he [Hackett] arguable should have, had he been
19  properly treated as a member." Further, Hackett will have the ability to compare each parties' Schedule
20  K-1s and Form 1040s prior to the alleged "buy-out," with those for the years that followed. The court
21  finds that there is no need for any party to review Schedule K-1s or any other tax document relating to
22  any separate venture or company a party might be involved in.

23  Petrie has already produced his Schedule K-1s for the pertinent years. He will therefore be
24  ordered to produce his Form 1040s for the tax years 2005 through 2009. Additionally, as both Feeney
25  and Hackett have produced their complete tax returns for the requested years, they are entitled to the
26  immediate return of all but their respective Form 1040s and Schedule K-1s for the tax years 2005

6

through 2009.  The produced documents will remain "Confidential- Attorneys' Eyes Only."

Accordingly, and for good cause shown,

IT IS ORDERED that plaintiff Sandy Hackett's Motion to Compel (#149) is granted in part, and denied in part as set forth above.  The parties shall produce or return the above referenced materials on or before **September 30, 2011**.

IT IS FURTHER ORDERED that Hackett's request for sanctions is denied.

DATED this 22nd day of September, 2011.

_____
**LAWRENCE R. LEAVITT**
**UNITED STATES MAGISTRATE JUDGE**